Vernon HANES, et al.,
Plaintiffs/Respondents,

v.

CONTINENTAL GRAIN CO.,
Defendant/Appellant.

No. ED 76807.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 13, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 29, 2001.

Application for Transfer Dismissed
May 9, 2001.

Richard S. Cornfeld, Bruce David Ryder, Daniel James Carpenter, Law office of Thompson Coburn, St. Louis, MO, for Appellants.

Richard B. Scherrer, Andrew Burton Mayfield, Thomas Blumeyer Weaver, Armstrong, Teasdale, Schlafly, Davis & Dicus, St. Louis, MO, for Respondents.

SULLIVAN, Judge.

Continental Grain Co. (Appellant) appeals from the trial court judgment entered upon a jury verdict awarding Respondents $100,000 each on temporary nuisance claims arising from Appellant's operation of hog farms in northwest Missouri. We affirm.

In this case, 108 residents in five counties in northwest Missouri sued Appellant for nuisance arising out of Appellant's operation of four hog farms in northwest Missouri. The residents claimed that odor, flies and/or contaminated water emanating from Appellant's operations unreasonably impaired the use and enjoyment of their properties. After a three and one-half month trial, a jury returned a verdict awarding 52 out of 108 plaintiffs $100,000 each on their nuisance claims. Respondents are 51 of those 52 prevailing plaintiffs.[1] Appellant timely filed this appeal.

Appellant claims the trial court erred in denying its motion for judgment notwithstanding the verdict with respect to compensatory damages because Respondents failed to make a submissible case in that (1) Respondents failed to present any evidence that the alleged nuisance was abatable, as required to establish a temporary nuisance, and (2) Respondents failed to present any evidence of diminished property value, which is the only type of damages recoverable for a permanent nuisance.

The denial of a motion for judgment notwithstanding the verdict presents the same issue as a denial of a motion for directed verdict. *Wells v. Orthwein,* 670 S.W.2d 529, 532 (Mo.App. E.D.1984). In reviewing the denial of a motion for directed verdict, we view the evidence and all reasonable inferences therefrom in the light most favorable to the jury's verdict, disregarding all evidence and inferences to the contrary. *Botanicals on the Park, Inc. v. Microcode Corp.,* 7 S.W.3d 465, 467 (Mo.App. E.D.1999). A motion for judgment notwithstanding the verdict should be granted only when the evidence and reasonable inferences to be drawn therefrom are so strong against the prevailing party that there is no room for reasonable minds to differ. *P.D.2000, L.L.C. v. First Financial Planners, Inc.,* 998 S.W.2d 108, 110 (Mo.App. E.D.1999).

Nuisance is the unreasonable, unusual or unnatural use of one's property

---

1. Appellant did not name Plaintiff Vernon Hanes as a respondent.

so that it substantially impairs the right of another to peacefully enjoy his or her property. *Snelling v. Land Clearance for Redev. Authority,* 793 S.W.2d 232, 232 (Mo.App. E.D.1990). Appellant does not maintain that a nuisance per se was not established in this case. Rather, Appellant contends that Respondents failed to establish that the nuisance was temporary. The distinguishing feature between a permanent and a temporary nuisance is the abatability of the nuisance. *Vermillion v. Pioneer Gun Club,* 918 S.W.2d 827, 831 (Mo.App. W.D.1996). A nuisance is temporary if it may be abated, and it is permanent if abatement is impracticable or impossible. *Id.* It is the character of the source of the injury, rather than the character of the injury, which distinguishes a temporary from a permanent nuisance. *Racine v. Glendale Shooting Club, Inc.,* 755 S.W.2d 369, 374 (Mo.App. E.D.1988). A permanent nuisance must result from a permanent construction which is necessarily injurious as installed and not from one which becomes injurious through its use. *Id.*

We note initially that prior to opening its hog farming facility, Appellant made several representations to the public that the hog farms would not produce odors noticeable beyond one quarter of a mile. Appellant also represented in a recorded radio interview as well as to neighbors of its proposed hog farm facility and government officials that it would employ the latest available technology in order to prevent pervasive odors. Against this factual backdrop, we now address Appellant's argument that Respondents failed to present any evidence that the nuisance caused by its hog farms was abatable.

Respondents presented substantial evidence of scientifically possible management practices and technologies available to abate the odor, water contamination, and insect infestation associated with Appellant's hog farm operations. Accordingly, Respondents presented substantial evidence that the nuisance created by Appellant's hog farms was abatable.

In regards to the odor nuisance, these practices and technologies included: using a proper amount of water in the start-up of an anaerobic lagoon; starting lagoons only at the beginning of warm weather; maintaining proper lagoon volumes; removing dead pigs and afterbirth from the lagoons on a timely basis; using lagoon covers, solid-liquid separators, aeration devices, and anaerobic digesters. Respondents also provided evidence that the odor associated with spreading waste material over farmland could be abated by using soil injection technology instead of travelling guns. Injection would put the waste into the ground as opposed to spreading it over the top. Respondents presented testimony that Appellant had recently built walls outside the exhaust fans positioned to disperse the odor from the hogs' buildings, and that the walls successfully abated the odors. There was evidence that such air dispersion techniques had been known for years. Respondents argued that Appellant could have had its dumpsters, filled to the brim with dead pigs such that the lids would not close, picked up and emptied more frequently by its rendering service. Respondents also argued that Appellant could have used more dumpsters, so that they would close completely.

Large wastewater spills at Appellant's hog farms also caused water contamination. Respondents presented evidence that these spills could have been prevented by better maintenance and inspection procedures, such as collecting construction debris and conducting periodic checks. Appellant had prevented damage from further wastewater spills by constructing new underground piping, installing automatic

controls, and building numerous containment ponds.

Insect infestation also comprised part of the nuisance. Respondents presented evidence that the slope of the lagoons, the fluctuation in the lagoons' levels and the composition of the lagoons and their open exposure, without covers, served as a breeding ground for flies. Dead animal carcasses also attracted flies. As discussed above, lagoon covers and more frequent disposal or covering of dead pigs would have abated this nuisance.

Respondents presented substantial evidence that it was economically feasible for Appellant to employ these methods and technologies to abate the nuisance created by its hog farms. Accordingly, we find that Respondents established that the nuisance in this case was a temporary nuisance, capable of scientifically possible and reasonably practical abatement.

■ We disagree with Appellant's contention that in order to show a nuisance can be abated, it must be shown that the entire nuisance can be eliminated, and a reduction or lessening of the nuisance is insufficient. This contention has no basis in Missouri law. Further it is not a logical argument. A nuisance is a substantial interference with the use and enjoyment of one's property. Substantial is a term of degree. A nuisance can be abated to the degree where it is no longer a substantial interference. Although in some cases cited by Appellant a nuisance may have been completely eliminated, that does not mean that a nuisance has to be completely eliminated in order to be abated. *See*, e.g., *Racine*, 755 S.W.2d at 372–373 ("Noise is not a nuisance per se but may be of such a character or so excessive as to become one, even though it arises from operation of a lawful business." ... "The trial court's relief was an effort to restrict the club's activities to a level which did not

constitute a substantial impairment of plaintiff's peaceful enjoyment of their property."). As illustrated in *Racine*, Appellant could reduce the odor, flies and wastewater spills emanating from its hog farms to the point where they do not constitute a substantial interference with Respondents' use and enjoyment of their property. Respondents demonstrated that such abatement was reasonably practicable and economically feasible. Accordingly, Respondents established a temporary nuisance by substantial evidence. Since we find that Respondents established a temporary nuisance, we need not address the part of Appellant's point on appeal concerning Respondents' failure to present any evidence of damages recoverable for a permanent nuisance.

■ In its second point on appeal, Appellant maintains that the trial court erred in denying Appellant's motion for judgment notwithstanding the verdict with respect to the claims of Mandy Patton–Stahl, Denise Turner, and Les Turner because those Respondents failed to make a submissible case of nuisance in that their evidence showed that they did not have any ownership or possessory rights in any property affected by the nuisance, an essential element of a nuisance claim.

Denise and Les Turner lived in their own house on Les Turner's father's land, with his consent. The Turners farmed the property, built improvements and repaired existing structures, repaired fences, and owned adjacent farmland. With her mother Juanita Patton's consent, Mandy Patton–Stahl lived with a young child in a separate dwelling on property owned by her mother.

Appellant maintains that to prevail in a nuisance case, a plaintiff must establish that the alleged nuisance impairs the use of property in which he has an interest.

Respondents contend that the occupants of a home who suffer interference with the enjoyment of the premises from a temporary nuisance may recover for any actual inconvenience or physical discomfort which materially affects their comfort or health.

 We find that a person who rightfully occupies but does not own a home may sue for injuries caused by a temporary nuisance. In a temporary nuisance action, the damages are for personal injuries inflicted upon the person occupying the property. *See*, e.g., *McCracken v. Swift & Co.*, 265 S.W. 91, 92 (Mo.1924). By contrast, the damages for a permanent nuisance involve the diminution in value of the residence, thereby necessitating that the one seeking damages from a permanent nuisance have an interest in the property. The two cases cited by Appellant do not aid its argument. In *Ellis v. Kansas City, St. J. & C.B.R. Co.*, 63 Mo. 131 (1876), the Court found that the husband, who happened to be in possession of the house, could bring a nuisance cause of action against a railroad company for the illness caused to his wife by a dead horse that the railroad company's train had hit and allowed to remain outside the plaintiff's house. We do not read this case as mandating a possessory or ownership interest in a property in order to bring a cause of action for temporary nuisance. Appellant also relies on *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 880 (Mo.1985), simply for its language that "Nuisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy *his* property." This sentence does not, by itself, make possessory or ownership interest in property a prerequisite to maintain-

ing a temporary nuisance claim. For the foregoing reasons, Appellant's second point on appeal is denied.

The judgment of the trial court is affirmed.[2]

MOONEY, P.J., and SIMON, J., concur.

---

**2.** Appellant's Motion to Strike Plaintiffs' References to Evidence and Exhibits Not in the Record is denied as moot, because this Court's resolution of Appellant's points on appeal was not dependent on those references.