**Everett PETERS, Cindy Peters and Rachel Kunz Hall, Appellant–Respondents,**

v.

**CONTIGROUP, et al., Respondent–Appellants.**

**Nos. WD 69614, WD 69647.**

Missouri Court of Appeals, Western District.

July 7, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 1, 2009.

Application for Transfer Denied Oct. 6, 2009.

 

 
 
 

 

 
 
 
 

 

 
 
 
 
 
 

 
 

 
 
 
 

 

 
 
 
 

 
 

Charles F. Speer, Kansas City, MO, and Richard Middleton, Savannah, GA, for appellant.

Jean Paul Bradshaw, Kansas City, MO, and Duncan Getchell, Jr., Richmond, VA, for respondent.

Before JAMES M. SMART, JR., P.J., JOSEPH M. ELLIS, and JAMES E. WELSH, JJ.

JAMES M. SMART, JR., Judge.

Rachel Hall appeals the trial court's grant of partial summary judgment in favor of the ContiGroup Companies, Inc., *et al.*, on certain of her nuisance claims. Everett and Cindy Peters, co-plaintiffs with Rachel Hall, also contest two of the trial court's evidentiary rulings in the jury trial of their nuisance claims. The ContiGroup Companies have filed a cross-appeal that is contingent on any reversal based on the appeal of Ms. Hall and the Peters. The judgment is affirmed in part and reversed in part.

## Background

Plaintiffs Everett and Cindy Peters are a married couple who reside in Gentry County, Missouri. Mrs. Peters's daughter, Rachel Hall, lived with the Peters during her childhood. She went on active duty with the military in June 2002. The Defendants ContiGroup Companies, Inc., Premium Standard Farms, Inc., and PSF Group Holdings, Inc., (hereinafter collectively referred to as "the ContiGroup defendants") operate several hog farm facilities in various northwestern Missouri counties, including Gentry County.

In 1996, 108 residents of northwest Missouri, including Everett and Cindy Peters, filed a nuisance lawsuit against Continental Grain Company, Inc., and two other defendants in St. Louis County Circuit Court. *See Hanes v. Cont'l Grain Co.,* 58 S.W.3d 1, 2–3 (Mo.App.2001). Cindy Peters's daughter, Rachel Hall, was a minor at that time and was not a plaintiff in that lawsuit. The *Hanes* plaintiffs alleged that Continental's hog farm operations at four different locations were a nuisance because of odors, flies, and contaminated water emanating from the facilities that unreasonably impaired the plaintiffs' use and enjoyment of their own properties. After three months of trial, the jury found in favor of fifty-two of those plaintiffs, including Everett and Cindy Peters. On May 17, 1999, the trial court entered judgment, finding an abatable, temporary nuisance and awarding $100,000 in damages to each of the prevailing plaintiffs. Mr. and Mrs. Peters each received $100,000 in damages. *Id.* at 2, 4.

On August 5, 2002, Mr. and Mrs. Peters and thirty-four other former *Hanes* plaintiffs filed another nuisance lawsuit against ContiGroup (or Continental)[1] and two other companies in Jackson County Circuit Court. That lawsuit was the genesis of the case we consider here. The petition alleged that despite the finding of a temporary nuisance in *Hanes* three years earlier, the defendants "continue to maintain a nuisance in close proximity to the plaintiff's property" in that "ill-smelling odors and/or contaminated wastewater continue to escape" onto the plaintiffs' property.

On that same date, a group of twenty-three spouses and children of the former *Hanes* plaintiffs also brought a nuisance lawsuit against the same group of defendants. Rachel Hall was a plaintiff in that

lawsuit. The petition alleged that "[t]hough the plaintiffs herein were not parties to the *Hanes* case, they are nonetheless adversely affected by the defendants' actions and are similarly situated to [those plaintiffs who were compensated by an award]." The petition also alleged that the defendants have failed to materially abate the nuisance even though over three years have elapsed since the *Hanes* judgment. Specific to Ms. Hall, the petition alleged that "[u]ntil enlisting in the Armed Forces ... Rachel Hall resided at her parents' residence located in Gentry County ... and retains her place of residence at their address ... in close proximity to the defendants' [facilities]."

On motion of the ContiGroup defendants, the court severed the plaintiffs' claims on the basis that they did not arise out of the same series of transactions or occurrences and because joinder would result in prejudice to the defendants. The court then joined the plaintiffs' claims into groups by household (*i.e.,* the spouses' and children's claims were joined with those of their respective spouse or parents). The first of those lawsuits to go to trial was the one brought by Mr. and Mrs. Peters, which had been joined with Rachel Hall's. The Peters's specific allegations were that the defendants' farming operations at their Homan facility in Gentry County constituted an abatable, temporary nuisance in that odors emanating from it substantially interfered with the Peters's use and enjoyment of their property. The Peters sought actual and punitive damages.

Prior to trial, the ContiGroup defendants moved for partial summary judgment as to Rachel Hall's nuisance claims that arose prior to May 17, 1999, on the basis that such damage claims had already

---

1. The parties do not explain the exact relationship between Continental Grain and the ContiGroup Companies but treat them as if they were the same entity.

been litigated by Mr. and Mrs. Peters in the earlier *Hanes* lawsuit and were barred from the new action. Following a hearing, the court granted the motion, finding that Rachel's pre–1999 claims were barred by *res judicata.* The court allowed Rachel's post-*Hanes* claims to go forward, finding that she retained her legal residence in Missouri and occupied the home from time to time even after joining the Navy.

The trial proceeded over a period of three weeks. At the close of all the evidence, the ContiGroup defendants moved for directed verdict claiming that the plaintiffs failed to make a submissible case either as to liability or punitive damages. The court denied the defendants' motions. The jury returned a verdict in favor of ContiGroup, and the court entered judgment accordingly.

Mr. and Mr. Peters and Rachel Hall (collectively "the plaintiffs") appeal. The ContiGroup defendants cross-appeal.

## Motion to Dismiss Cross–Appeal Denied

The Peters have filed a motion to dismiss the ContiGroup defendants' cross-appeal, alleging that the notice was not timely filed and that the cross-appeal was barred because the defendants failed to seek post-trial relief. The defendants respond that the plaintiffs' calculation of the filing deadline failed to take into account a State holiday and that Missouri law permits a prevailing party to take a conditional cross-appeal without first moving for post-trial relief. This court notified the parties of our intent to take that motion with the case. Because our rulings in this case make it unnecessary to consider the cross-appeal, the motion to dismiss is denied.

## Legal Framework: Nuisance

■ "An action for private nuisance rests on tort liability...." *Vermillion v. Pioneer Gun Club,* 918 S.W.2d 827, 831 (Mo.App.1996). "Nuisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his property." *Frank v. Envtl. Sanitation Mgmt., Inc.,* 687 S.W.2d 876, 880 (Mo. banc 1985). The focus is on the defendant's unreasonable interference with the plaintiff's use and enjoyment of his land. *Id.* The law of nuisance recognizes the inherent conflict between the rights of neighboring property owners. *Id.* The unreasonable use element seeks to balance those rights. *Id.*

■ A nuisance can be temporary or permanent. *Cook v. DeSoto Fuels, Inc.,* 169 S.W.3d 94, 106 (Mo.App.2005). "A nuisance is temporary if it may be abated, and it is permanent if abatement is impracticable or impossible." *Hanes,* 58 S.W.3d at 3. If a nuisance is found to be temporary, the defendant is legally obligated to terminate the injury. *Cook,* 169 S.W.3d at 107. Each day it continues is considered "a repetition of the original wrong, and successive actions accrue as to each injury[.]" *Id.* The classification of a nuisance as temporary or permanent determines the measure of damages. *Vermillion,* 918 S.W.2d at 831. For a temporary nuisance, the measure of damages is the decrease in the property's rental value during the duration of the nuisance. *Id.* at 831–32. It also includes other incidents of damage such as loss of comfort and health. *Id.* at 832. Damages for a permanent nuisance are measured by the change in the property's fair market value as a result of the injury. *King v. City of Independence,* 64 S.W.3d 335, 340 (Mo.App.2002) (*overruled on other grounds* ).

## Point I: Rachel Hall's Pre–1999 Claims

In the first point, Rachel Hall argues that the trial court erred in granting defendants a partial summary judgment on Rachel Hall's claims prior to May 17, 1999, on the basis that they were litigated in the earlier *Hanes* case and, thus, were barred under the doctrine of *res judicata*.

### *Standard of Review*

The propriety of a summary judgment is a question of law that we review *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). In considering an appeal from a grant of summary judgment, we review the record in the light most favorable to the nonmovant. *Id.* We apply the same criteria on appeal as those the trial court uses to determine the propriety of sustaining the motion initially. *Id.* Summary judgment is appropriate where no genuine issue of material fact exists and the moving party establishes a right to judgment as a matter of law. *Id.* at 380.

### *Discussion*

The common-law doctrine of *res judicata* precludes the same parties or their privities from relitigating a claim formerly made. *Chesterfield Vill., Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318 (Mo. banc 2002); *Am. Polled Hereford Ass'n v. City of Kansas City*, 626 S.W.2d 237, 241 (Mo.1982). For *res judicata* to attach, the following factors must be the same in both cases: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality of the person for or against whom the claim is made. *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 501 (Mo. banc 1991).

Rachel Hall contends that the third factor is missing in that she was neither a named party in the *Hanes* lawsuit nor in privity with others who were named parties, citing *Lomax v. Sewell*, 50 S.W.3d 804, 809 (Mo.App.2001) (privity, in this context, means that the interests of the party and non-party are so closely intertwined that the non-party can fairly be said to have had her day in court). Rachel Hall notes that she was a minor at the time but was not named or represented in the lawsuit by a next friend or duly appointed guardian, as required by Rule 52.02(a).[2] She also says that she was not awarded any damages in *Hanes* and that her family members, who were plaintiffs, did not recover any damages on her behalf. Thus, she argues, her pre–1999 claims cannot be barred by *res judicata*. She seeks reversal of the summary judgment and, at the very least, a trial on her pre–1999 claims.

Rachel Hall did not testify in the *Hanes* case. There was testimony by the Peters in *Hanes* about the harmful effects of the nuisance on Rachel. ContiGroup says this means that they were seeking damages for her as well. The Peters testified that the offensive odors caused Rachel to remain inside the home as much as possible; prevented her from helping her parents with the farm; strained intra-family relationships; made Rachel nauseous on occasion; and interfered with her relationships with

---

**2.** Under Rule 52.02(a), "[c]ivil actions by minors may be commenced and prosecuted only by a duly appointed guardian of such minor or, if there is no such guardian, by a next friend appointed in such civil action[.]" The defendants point to subsection (m), which states: "Failure to appoint a next friend or guardian ad litem for a minor ... shall not invalidate the proceedings if the court finds that the interests of the minor ... were adequately protected."

friends. The plaintiffs responded that minimal testimony about Rachel's circumstances did not alter the fact that she was not a plaintiff in *Hanes* and received no money from that judgment.

The ContiGroup defendants cite *Ellis v. Kansas City, St. Joseph, & Council Bluffs Railroad Co.*, 63 Mo. 131, 135–36 (1876), to show that Rachel's interests *were* litigated by the Peters in *Hanes*. They say that under *Ellis*, "a property-owning adult family member may bring a nuisance suit and recover damages for injuries he or she suffered, as well as those suffered by a child, regardless of whether the children are named as parties" and "without having to qualify as guardians or otherwise name the children in the suit." According to ContiGroup, the Peters presented evidence in *Hanes* to support a nuisance claim on behalf of Rachel, in conformity with *Ellis*, and recovered damages. Thus, they say, to allow Rachel to re-litigate the identical claim would be seeking a double recovery.[3]

The defendants appear to misunderstand or misinterpret *Ellis*. We do not find support for their broad interpretation of the case. In *Ellis*, the wife of the occupant of a dwelling house was made sick by noxious odors arising from a decomposing horse which had been killed by the defendant's train and left lying near the plaintiffs' residence. *Id.* at 133. The question in *Ellis* was whether the husband's cause of action for injuries his wife

sustained from the nuisance survived to the wife after the husband's death. *Id.* at 135. The Court first distinguished between a public and a private nuisance, stating that a public nuisance was injury to the community and private nuisance was injury to specific lands. *Id.* After finding that the railroad caused a private nuisance, the Court explained that the right of action was in the husband, because he was the occupier and the lawful possessor of the house. *Id.* The Court held that because the husband alone was considered to be the possessor of the property, only he could bring a claim for his wife's injuries:

> [T]he cause of action accrued to the occupier or tenant of the property affected by the nuisance ..., and in a suit for damages occasioned thereby, he can recover for damages to the members of his family, without making them parties. *We have not been able to find any authority which would authorize us to declare that each member of the family of the occupant of a house affected by a private nuisance could maintain an action therefor ....*

*Id.* at 136 (emphasis added) (citations omitted). The Court observed that the plaintiff in a nuisance action, "must prove possession of the house," as well as the injurious act and damages. *Id.* Thus, the Court found no error in the trial court's action in directing a verdict for the defendant.[4]

---

3. The ContiGroup defendants complain that two of Rachel's arguments are made for the first time on appeal: (1) that her "personal injury" claim was not litigated in *Hanes*, and (2) that none of the money recovered in *Hanes* was for her "personal injury." The complaints are without merit; the plaintiffs raised these claims in their summary judgment response. The defendants fail to acknowledge that the plaintiffs use the term "personal injury" to describe Rachel's loss of use and enjoyment. *See Hanes*, 58 S.W.3d at 5 (damages for "personal injury" in tempo-

rary nuisance action include an occupier's loss of use and enjoyment). We also reject the defendants' contention that preclusion of Rachel's claims was harmless error because she has not demonstrated that she has sufficient evidence to support her claims. Unless and until Rachel's pre–1999 claims are allowed to go forward, we cannot know this.

4. The court instructed the jury that it could not legally find that the wife was "in possession" of the property, and that if she was not

The defendants say that "*Ellis*'s rule of pleading and proof in nuisance actions" has never been abrogated. We disagree. We are of the opinion that *Ellis* has been effectively overruled by *McCracken v. Swift & Co.*, 265 S.W. 91, 92 (Mo.1924). The question in *McCracken* was whether it was error to instruct the jury in a temporary nuisance case that the plaintiff was entitled to damages for impairment of the ordinary use and enjoyment of his home in addition to the decrease in rental value. *Id.* at 91–92. The Court concluded that it was not. *Id.* at 91. In deciding that question, the Court first distinguished *Ellis*, noting that that decision was rendered before the adoption of the Married Woman's Act:

> [W]e may add we do not understand that the [trial] court intended to adopt the decision, in *Ellis v. K. C., etc., R. R.*, that, where the wife ... was made sick by the stench arising from the [nuisance], she could not, in such case, recover damages for her sickness and injuries. That decision was rendered before the adoption of our Married Woman's Act.

*Id.* at 92. The Court then quoted *United States Smelting Co. v. Sisam*, 191 F. 293, 301 (8th Cir.1911), for the proposition that the head of household's personal injury claim may include his distress from observing the suffering of his family, but that does not preclude the household members' separate causes of action for their own direct personal injury from the nuisance. *Id.* (stating that the wife, alone, had a cause of action for her own personal injuries). Thus, the idea in *Ellis* that the husband, as head of the family, had the sole right to bring a nuisance claim and recover damages for all the dwellers in the home was rejected in *McCracken*. *McCracken* also indicates that all that is

required to bring a temporary nuisance claim is to be an "occupier" of the property. Quoting 4 SUTHERLAND ON DAMAGES 3890 (4th ed.), *McCracken* states that one who "occupies" a home "may be compensated for any actual inconvenience and physical discomfort which materially affected the comfortable and healthful enjoyment and occupancy of his home, as well as for any actual injury to his health or property caused by the nuisance." *Id.*

The confusion surrounding *Ellis* stems from the fact that the old common law of nuisance in effect at the time was strictly concerned with damage to the land; thus, a cause of action in nuisance belonged only to the rightful possessor of the property. *Ellis*, 63 Mo. at 135; *see also* 66 C.J.S. *Nuisances* sec. 69a (1998). ("The early common law, which regarded a nuisance only as an injury to some interest in land, gave the right to recover damages for nuisances only to a person having interest in lands....") It is not clear that damages for the discomfort and inconvenience caused by things such as foul odors were even recoverable when *Ellis* was decided in 1876. The *Ellis* Court based its decision on its "[inability] to find any authority which would authorize us to declare that each member of the family ... affected by a private nuisance could maintain an action therefor[.]" *Id.* at 136. Because the Court was focusing on injury to the land under the old common law, it is not surprising that it could not find any authority to the contrary. The Court oversimplified the concept of private nuisance, limiting it to damage to the property. As a result, the court wrongly concluded that the wife could not recover for her damages because she was not a legal possessor of the land. The two jury instructions wrongly directed a verdict for the defendant on the theory

in possession, she could not recover. *Id.* at 136.

that the plaintiff did not have legal possession of the property. *Ellis* is cited in some of the authorities as a minority view,[5] and it certainly is a minority view today. The *McCracken* case recognized the distinction between personal injury arising from noxious elements in the neighboring property and diminution in the value of the land. 265 S.W. at 92.

■ In *Hanes* (the appeal of the Peters's earlier nuisance case), the defendants claimed that certain plaintiffs failed to make a submissible case of nuisance because "they did not have any ownership or possessory rights in any property affected by the nuisance." 58 S.W.3d at 4. The plaintiffs at issue were adult children who lived in separate dwellings on the properties owned by their parents. *Id.* Relying upon *McCracken*, the *Hanes* court held that an occupier of property can recover for loss of enjoyment and use of property even if he holds no possessory interest in the property:

> We find that *a person who rightfully occupies but does not own a home may sue for injuries caused by a temporary nuisance.* In a temporary nuisance action, the damages are for personal injuries inflicted upon the person occupying the property. *See, e.g., McCracken v. Swift & Co.,* 265 S.W. 91, 92 (Mo.1924).

*Id.* at 5 (emphasis added). By contrast, damages for a *permanent* nuisance involve the diminution in value of the property; thus, one seeking damages for a *permanent* nuisance must have a property interest. *Id.* The court noted the finding in *Ellis* that the husband could bring a nuisance claim for his wife's illness, but stated "[w]e do not read [*Ellis*] as mandating a possessory or ownership interest in a

property in order to bring a cause of action for temporary nuisance." *Id.* Thus, under *Hanes*, while a permanent nuisance is still dependent upon property ownership, the cause of action for a temporary nuisance can be maintained by an *occupier* of the property with no ownership interest. See *id.* (*citing McCracken,* 265 S.W. at 92).

We conclude that the holdings in *Hanes* and *McCracken* refute defendant's contention. Although a householder has brought his own cause of action for damages, including damages related to *his distress* caused by observing the discomfort and injuries suffered by members of his family, those family members are not barred by *res judicata* from bringing their own claims. Thus, Rachel, as an occupant of the Peters's residence, possessed her own separate cause of action for temporary nuisance based on the direct personal injuries she sustained prior to May 17, 1999.

The defendants assert that a child necessarily lacks a sufficient property interest to bring a nuisance claim. In a supplemental letter, defendants cited *Swearingen v. Long,* 889 F.Supp. 587, 592–93 (N.D.N.Y.1995), which held that under New York law, a minor child cannot maintain a cause of action for private nuisance because he has no "legally protected ownership interest" in the property.

The answer to whether a minor child occupying premises affected by nuisance may bring a nuisance action (with appointment of next friend) varies by jurisdiction. The consensus seems to be "yes." *See, e.g., Bowers v. Westvaco Corp.,* 244 Va. 139, 419 S.E.2d 661 (1992); *Hosmer v. Republic Iron & Steel Co.,* 179 Ala. 415, 60 So. 801, 801–02 (1913); *Ft. Worth & Rio*

---

**5.** *See, e.g.,* PROSSER & KEETON ON THE LAW OF TORTS, sec. 87 (W. Page Keeton, gen. ed. 5th ed.1984); 66 C.J.S. *Nuisances* sec. 69 (1998); Note, *Nuisance–Whether Property Interest Nec-* essary to Recovery–Death by Wrongful Act, 27 YALE L.J. 280, 281 (1917); RESTATEMENT (SECOND) OF TORTS, sec. 821E cmt. D (1979).

*Grande Ry. Co. v. Glenn*, 97 Tex. 586, 80 S.W. 992, 992 (1904); *Birke v. Oakwood Worldwide*, 169 Cal.App.4th 1540, 87 Cal. Rptr.3d 602 (Cal.Ct.2009); *Altfeter v. Bourough of Naugatuck*, No. CV960136342S, 2005 WL 896123, at *1 (Conn.Super.Ct., March 15, 2005); *Hoffman v. United Iron & Metal Co.*, 108 Md.App. 117, 671 A.2d 55, 63–64 (Md.Ct.Spec.App.1996). *See also* RESTATEMENT (2ND) OF TORTS § 821E cmt. d (1977) ("occupancy is a sufficient interest in itself to permit recovery for invasions of the interest in the use and enjoyment of the land"). Some jurisdictions say "no" based on the fact that a child does not have a possessory (or otherwise sufficient) interest in the property. *See, e.g., Swearingen*, 889 F.Supp. at 593; *Bolin v. Cessna Aircraft Co.*, 759 F.Supp. 692, 720 (D.Kan. 1991); *Arnoldt v. Ashland Oil, Inc.*, 186 W.Va. 394, 412 S.E.2d 795, 803–04 (1991).

The answer to this question, understandably, seems to be closely related to the way the particular state handles the question of whether it is sufficient to be a mere "occupier" of the property to bring such a claim. Thus, we conclude, on the basis of *McCracken* and *Hanes*, that a child, as an occupier of the property, has the right to bring such a claim in Missouri. We find no authority to support the notion that a minor child is barred from later pursuing her own temporary nuisance claim if not joined in a prior suit for the same nuisance.

Based on the foregoing, we conclude that Ms. Hall had a cause of action for her loss of use and enjoyment that was not asserted in *Hanes*. Now that she is of the age of majority, she may assert it herself.

### Point II. Use of Power–Point Slide

 The Peters claim in the second point that the trial court erred in permitting the defendants to display a power-point slide over plaintiffs' objection in opening statement and to again display it and discuss it in closing argument. The plaintiffs say the slide misstated the plaintiffs' burden of proof and misled the jury as to the elements of a private temporary nuisance, in that it referred to "offensiveness" and "frequency," which are not required elements.

In opening statement, defense counsel displayed a power-point slide to the jury.[6] Referring to that slide, counsel said the issues to be discussed included whether the odor from the Homan farm was "so offensive" and "so frequent" that it substantially interferes with the Peters's use and enjoyment of their property. The Peters objected, contending that the slide misstated the law of nuisance by improperly suggesting that "frequency" and "offensiveness" are required elements of a nuisance claim. The court overruled the objection. The slide was not introduced into evidence. ContiGroup referred to the frequency and offensiveness of the odors during questioning at trial without objection. The Peters say they did object off the record to ContiGroup's use of the slide in closing argument.

 A trial court's ruling on objections to statements made by counsel during argument are reviewed for an abuse of discretion. *Nelson v. Waxman*, 9 S.W.3d 601, 606 (Mo. banc 2000). The court's rulings will be reversed only upon a showing of prejudice that affected the outcome of the trial. *State v. Tinsley*, 143 S.W.3d 722, 734 (Mo.App.2004). "[M]isstatements of the law are impermissible during closing argument, and a positive and absolute duty

---

**6.** The parties do not include a copy of the slide in their briefs or point to the location of a copy in the record.

... rests upon the trial judge to restrain such arguments." *Heshion Motors, Inc. v. W. Int'l Hotels,* 600 S.W.2d 526, 534 (Mo. App.1980). However, "the permissible field of argument is broad, and so long as counsel does not go beyond the evidence and the issues drawn by the instructions, or urge prejudicial matters or a claim or defense which the evidence and issues drawn by the instructions do not justify, he is permitted wide latitude in his comments." *Id.*

■ The Peters complain about statements that the odors had to be "so offensive" and "so frequent" that they substantially interfered with the plaintiffs' use and enjoyment of their property. A nuisance is defined as "a *substantial* interference with the use and enjoyment of one's property." *Hanes,* 58 S.W.3d at 4 (emphasis added). "Substantial is a term of degree." *Id.* "[T]he primary focus is on defendant's unreasonable interference with the use and enjoyment of plaintiff's land." *Rychnovsky v. Cole,* 119 S.W.3d 204, 209–10 (Mo. App.2003). Whether a use is "unreasonable" and whether it "substantially" impairs the rights of another to use his property are questions of fact for the jury. *King,* 64 S.W.3d at 339. The terms "so offensive" and "so frequent" are simply a means of measuring whether the use was unreasonable or the interference substantial. The offensiveness and frequency of the odor are "relevant factual considerations" that counsel could properly argue and the jury could properly consider in deciding whether the Homan operations were an unreasonable use that substantially interfered with the plaintiffs' enjoyment of their property. *See Rychnovsky,* 119 S.W.3d at 210.

The court did not err in overruling plaintiffs' objection to use of the slide in opening statements, because it did not misstate the law or mislead the jury. Even if the slide was improper, the plaintiffs do not demonstrate that this resulted in prejudice that "materially affect[ed] the merits of the action" so as to warrant reversal. *See* Rule 84.13(b); *Tinsley,* 143 S.W.3d at 735 (discussing closing arguments).

■ The plaintiffs acknowledge that their only objection to the slide in *closing argument* was made off the record. A party serious about an objection should make sure that the objection gets on the record, or that they obtain a stipulation from the opponent that the objection was made (and that the objection was of a specific nature). By failing to object on the record, the plaintiffs failed to preserve these claims. The plaintiffs say that when an argument is so "obviously false and manifestly prejudicial upon every consideration," it is unnecessary to repeat an objection "when [opposing] counsel [has been] encouraged by the Court's approval of the offending statement," quoting *Kelley v. Hudson,* 407 S.W.2d 553, 558 (Mo.App. 1966). These statements, however, were not "obviously false and manifestly prejudicial," nor did the court express its "approval" of the statements. "The failure to object ... during closing argument is fatal to a claim on appeal that the argument was improper." *Arrington v. Goodrich Quality Theaters, Inc.,* 266 S.W.3d 856, 861 (Mo.App.2008). We do not believe that the plaintiffs' single objection to the slide during opening statement relieved them of their obligation to object—on the record—to its use in closing if they truly believed it was a "blatant" misstatement of the law warranting reversal. Their failure to place the objection on the record affords this court nothing to review.

■ Alternatively, the Peters ask for plain error review. "Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, ... when the court finds that mani-

fest injustice or miscarriage of justice has resulted therefrom." Rule 84.13(c). "Plain error is evident, obvious, and clear error." *Estate of Werner*, 133 S.W.3d 108, 111 (Mo.App.2004). This claim does not rise to the level necessary for plain error review. Even if counsel misstates the law in closing argument, if the circuit court properly instructs the jury, then manifest injustice or a miscarriage of justice generally will not be found. *See, e.g., State v. Edwards*, 116 S.W.3d 511, 537 (Mo. banc 2003); *State v. Parker*, 886 S.W.2d 908, 926 (Mo. banc 1994). Here, the circuit court properly instructed the jury on the law. The plaintiffs acknowledge this in their brief, stating that the jury instructions given were "the correct [Missouri Approved Instructions] for private nuisance." There is no plain error here. Point denied.

### Point III: Exclusion of Irrelevant, Collateral Evidence

In their third point, the Peters contend that the trial court erred in denying their request to confront Robert Manly, former president of Premium Standard Farms, with his pleadings in a separate, unrelated "nuisance" lawsuit,[7] which, they say, amounted to a prior inconsistent statement and could have been used to impeach his testimony in this lawsuit.

Before trial, the plaintiffs sought permission to introduce portions of a deposition from Mr. Manly. The designated excerpts pertained to Mr. Manly's personal involvement in a property dispute with the City of Shawnee, Kansas, concerning a softball field that was to be constructed near his home. The Peters maintained that the information was relevant to impeach Mr. Manly's testimony in an earlier deposition regarding "his feelings" about

the plaintiffs' nuisance claims. The defendants objected that the testimony was irrelevant, improper for impeachment, prejudicial, and likely to mislead jurors. They pointed out that the lawsuit was brought by Mr. Manly in his personal capacity and related to no issues in this case. The court agreed and excluded the evidence.

■■■■■ The admission or exclusion of evidence rests in the sound discretion of the trial court, and the court's decision will be reversed only if it constitutes an abuse of discretion. *Oldaker v. Peters*, 817 S.W.2d 245, 250 (Mo. banc 1991). "The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Id.* We review for prejudice, not mere error, and will reverse only if the error was so prejudicial that the defendant was deprived of a fair trial. *Elliott v. State*, 215 S.W.3d 88, 93 (Mo. banc 2007).

■■■■■ The defendants say the trial court properly precluded questions about Mr. Manly's unrelated property dispute because it concerned a collateral matter and was irrelevant to this lawsuit. "The test for relevancy is whether an offered fact tends to prove or disprove a fact in issue or corroborates other relevant evidence. . . ." *Oldaker*, 817 S.W.2d at 250. "A matter is considered to be collateral if the fact in dispute is of no material significance in the case or is not pertinent to the issues developed." *State v. Dunson*, 979 S.W.2d 237, 242 (Mo.App.1998). "[I]t is not error to exclude offers to impeach on immaterial or collateral matters." *State v. Wolfe*, 13 S.W.3d 248, 258 (Mo. banc 2000). We agree that the evidence the plaintiffs

---

7. The Peters characterize this dispute as a "nuisance lawsuit." ContiGroup calls it a "zoning board appeal." For our purposes, the exact nature of the dispute is irrelevant.

sought to introduce was irrelevant and collateral. Its purpose was merely to make Mr. Manly appear hypocritical for not being sympathetic to their claims even though he had earlier raised similar concerns as to his own family. Whether or not Mr. Manly's personal feelings about plaintiffs' claims are justified is an entirely collateral matter that does not relate to any issue ultimately decided in this case. It cannot be said that the circuit court abused its discretion in excluding it.

■ The plaintiffs also fail to show any prejudice from the exclusion of the evidence. To warrant relief, the plaintiffs had to show prejudice that "materially affect[ed] the merits of the action." Rule 84.13(b); *Elliott*, 215 S.W.3d at 93. While plaintiffs argue that the evidence was critical to their punitive damages claim, we note that there was no submissible punitive damage claim. Point denied.

### Defendants' Cross–Appeal

The ContiGroup defendants raise two claims on cross-appeal that they ask us to consider in the event the judgment is reversed on any of the plaintiffs' claims. Defendants say the circuit court erred in denying its motions for directed verdict: (1) on the issue of liability because the plaintiffs failed to make a submissible case of temporary nuisance on the element of adaptability; and (2) on punitive damages because a submissible case for such damages was not made.

Although we are reversing and remanding with instructions to conduct a trial on Rachel Hall's pre–1999 claims, it is unnecessary to address the denial of the defendants' directed verdict motions. Ms. Hall's pre–1999 claims were precluded via summary judgment prior to trial; thus, no evidence concerning those claims was presented. Consequently, the trial court could not have erred in denying a motion for directed verdict on the basis that the plaintiffs failed to make a submissible case on those claims. Unless and until Rachel's pre–1999 claims are allowed to go forward, we cannot know if her evidence would support her liability and punitive damages claims. Additionally, because we are affirming the judgment as to the case that *was* presented (the Peters's post–1999 claims), it is unnecessary to address these arguments.

### Conclusion

We reverse the summary judgment as to Rachel Hall's claim for injuries occurring prior to May 17, 1999, and remand with directions to conduct a trial on her claim. We affirm in all other respects.

All concur.