

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

DANIEL BROTHERS,

    Appellant,

v.

EDWARD JAMES BECKER,

    Respondent.

)
)
)
)
)
)
)
)
)

No. ED112609

Filed: October 7, 2025

**Appeal from the Circuit Court of Pike County**
**The Honorable James D. Beck, Judge**

In the wee hours of November 3, 2018, as appellant Daniel Brothers drove along Route H, an unlit roadway in Pike County, Missouri on the way to his property, Brothers' vehicle abruptly struck two cows on the road, cows that were owned by nearby cattle farmer Edward Becker. Brothers sued Becker for personal injuries, medical expenses, and property damage pursuant to Missouri's Stock Law, section 270.010[1], which imposes civil liability on the owner of animals that escape their enclosures, "run at large," and cause damages or injuries. When the damages or injuries occur on a public roadway, the

---

[1] All statutory references are to the Revised Statutes of Missouri (2016).

animals' owner may only escape liability by proving they were outside their enclosure through no fault or negligence of the owner.

So, at the trial here, after Brothers established his prima facie case – that the cows were outside their enclosure and caused the crash and his damages – the burden shifted to Becker to disprove his own fault. The jury found in favor of Becker.

Brothers now appeals in three points. First, that the trial court erred in denying his motion for directed verdict at the close of all evidence and his motion for judgment notwithstanding the verdict because Becker failed to adduce sufficient evidence that he was *not* negligent. Second, that the trial court erred in allowing Becker and his son, Sam, to testify that the cows had never escaped their enclosure – neither before nor since that night – because such evidence is inadmissible to the negligence question. And finally, that the trial court erred in rejecting Brothers' expert's testimony that certain photographs taken in December 2023 showed parts of the fence to be in poor condition since Becker had opened the door to this post-accident condition of the fence by conceding the fence was "essentially" in the same condition in 2023 as at the time of the accident in 2018.

We affirm. First, the court properly denied Brothers' motions for directed verdict and JNOV because Becker adduced sufficient evidence in support of his affirmative defense[2] under the Stock Law that he was not at fault or negligent. Second, the Beckers'

_____

2 While the Stock Law does not call the animal owner's defense an affirmative defense, the court in *Anderson v. Glascock* alluded to it as such and we agree because it is certainly in the nature of an affirmative defense. 271 S.W.2d 243, 245 (Mo. App. 1954). "An affirmative defense is a procedural tool that allows the defendant to defeat or avoid the plaintiff's cause of action and avers that even if the allegations of the petition are taken as true, the plaintiff cannot prevail because there are additional facts that permit the defendant to avoid the legal responsibility

testimony that the cows had never escaped did not prejudice Brothers since he extracted the same evidence during cross-examination of Becker's son. Moreover, Brothers failed to preserve this issue. Finally, although the evidence of the fence's condition in 2023 was relevant given Becker's concession that the fence was similar in 2018, any prejudice caused by the court's exclusion of that evidence was likely neutralized when the court permitted Brothers' expert to testify that the fence was inadequate in numerous locations since it was a lightweight, woven wire panel typically used for smaller livestock.

**Background**

Just before daylight on November 3, 2018, Brothers struck two cows owned by Becker as he drove east on Route H. The collision totaled Brothers' truck and sent him to hospital. Upon learning of the accident, Becker and Sam went directly to the scene and searched for their surviving cows. They found seven cows at the bottom of Sam's driveway near the cows' pasture and the rest nearly two-and-a-half miles away.

After securing the cows, Becker and Sam observed that the panel gate in the southwest corner of the pasture was down and twisted. The center post was disconnected, the barbed wire mangled, and the support post bent over and flat. Hoof tracks and manure marked the path the cows took from the pasture down a gravel county road onto Route H.

At trial, both Beckers testified that the cows had never escaped. Pre-trial, Brothers had filed a motion in limine seeking to exclude that testimony and renewed that motion in

---

alleged." *Giudicy v. Mercy Hospitals East Communities*, 645 S.W.3d 492, 500 (Mo. banc 2022) (internal citations omitted).

chambers during trial. During direct examination, Sam testified that the cows had not escaped the panel gate prior to the 2018 incident. At that point, Brothers objected, "Just show an objection, Your Honor to the fact the Court's overruled." Then, during cross-examination, Brothers returned to that subject by asking Sam if the cows had escaped that panel before. Sam confirmed that they had not. On redirect, Sam again testified that this incident was the only time the cows had run through the panel gate. Brothers objected. Sam later testified the cows had not escaped *since* the incident and testified twice more that the cattle had never escaped the pasture but Brothers did not object to that testimony. Becker himself also testified three times that the cows had never escaped the pasture and Brothers objected to only two of those assertions.

The Beckers testified the cows had ample food and water and were accustomed to regular feedings including one the next morning. They checked on them twice a day, including the evening before when the cows did not seem agitated and the panel gate was secure and in place.

Derek Brake, an animal science professor at the University of Missouri who also did cattle management consulting, testified on behalf of Becker about fencing practices and cattle behavior. On December 28, 2023, Brake visited the escape site, inspected the enclosure, and asked the Beckers about their fence and cattle management regimen. Brake testified that at the time of his inspection the fence and panel gate were in line with best management practices; that the cows' behavior that night was atypical because well-fed, content cows generally do not seek to escape; and, that the significant distance Becker's cattle traveled meant they had likely been spooked by something.

4

For his part, Brothers called his expert witness Brandon Ogden, a ranch manager for a family cattle operation. Ogden testified concerning the condition of the fence in December 2023 when he inspected it together with expert Brake. Ogden told the jury his general opinions about the fence including that the lightweight woven panel was more appropriate for smaller livestock such as sheep, goats, and pigs, and that Becker's use of a woven wire panel to fill a gap in the perimeter fence was not common. Moreover, Ogden criticized how Becker had configured the gate's closure mechanism. Finally, Ogden opined that the fence was wholly inadequate because if there is a gap in the corner of the pasture, like where this incident occurred, there should be an actual gate and not simply a woven wire panel stuck in that gap since cows like to congregate in corners. Instead, a metal gate with a hinge on one end and a chain on the other is the standard in the industry.

But the court excluded Ogden's testimony that the fence's condition did not comply with Missouri's Fence Act, section 272.020, and excluded Ogden's testimony regarding the photographs depicting the fence's December 2023 condition. At that point, Brothers made an offer of proof as to Ogden's excluded testimony during which Ogden testified that the Becker fence violated the Missouri Fence Act in several respects. First, the Fence Act requires a fence to be at least four feet tall with at least four strands of barbed wire but that when he walked the Becker fence perimeter, he found multiple locations that were only two feet tall with unsecured portions, sagging portions, unattached wire, and gaps. At least five photographs taken during the 2023 inspection documented these defects.

5

The jury returned a unanimous verdict in favor of Becker. This appeal follows.

## Discussion

*Point One - Sufficiency of the Evidence*

Brothers first claims that the trial court erred in denying his motion for directed verdict and motion for JNOV because Becker failed to present sufficient evidence to satisfy the burden of proof on his affirmative defense that the cows' escape was not due to his fault or negligence. We disagree.

*Standard of Review*

"The standard of review for failures to sustain motions for directed verdict and for JNOV is essentially the same." *Fleshner v. Pepose Vision Institute, P.C.*, 304 S.W.3d 81, 95 (Mo. banc 2010). We review de novo the denial of a motion for directed verdict. *Walsh v. City of Kansas*, 481 S.W.3d 97, 111 (Mo. App. 2016). We view the evidence in the light most favorable to the non-moving party. *Garcia v. Leftwich-Kitchen*, 412 S.W.3d 348, 350 (Mo. App. 2013). We must determine whether the non-moving party has made a submissible case. *Id.* "Neither a motion for directed verdict nor for JNOV should be granted unless there are no factual issues remaining for the jury to decide." *Walsh*, 481 S.W.3d at 111.

To establish a prima facie case pursuant to the Stock Law, the plaintiff must prove the time and place of the accident, that defendant owned or possessed the animals, that the Stock Law was in effect, and the plaintiff's damages. *Keefer v. Hartzler*, 351 S.W.2d 479, 480-81 (Mo. App. 1961). Once the plaintiff establishes these elements, the burden

6

shifts to the defendant to show that his livestock was outside its enclosure through no negligence on his part. *Anderson v. Glascock*, 271 S.W.2d 243, 247 (Mo. App. 1954).

First, we observe that the trial court correctly employed the burden-shifting the Stock Law requires. Brothers readily met his own burden by proving he hit Becker's cows as they ran at large on Highway H. The burden shifted to Becker then to disprove any fault or negligence on his part in the cows' escape, flight, and presence on the roadway. Turning then to Becker's affirmative defense, we find that Becker likewise met his burden by adducing evidence that the panel gate was adequate, that Becker routinely monitored the cows and the fence, and his expert's testimony the cows were likely "spooked" that night given the distance they traveled. Thus, it was up to the jury to decide this host of fact questions which it did and Brothers was not entitled to a directed verdict or JNOV on Beckers' affirmative defense. *Garcia*, 412 S.W.3d at 350.

### Point Two - Lack of Prior or Subsequent Escapes

In his second point, Brothers claims the court abused its discretion in allowing the Beckers to testify that before or after November 3, 2018, the cows had never escaped. We find that because Brothers also elicited the same testimony from Sam that the cows had never escaped at the panel gate, no prejudice occurred. Moreover, Brothers waived his objection to this evidence because he did not timely lodge a specific objection each time the evidence was offered.

### Standard of Review

"The admissibility of evidence lies within the sound discretion of the trial court and will not be disturbed absent abuse of discretion." *Mitchell v. Kardesch*, 313 S.W.3d

7

667, 674-75 (Mo. banc 2013) (internal citation omitted). We reverse only when the ruling is "clearly against the logic of the circumstances" and so "arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* Moreover, "[i]f reasonable persons can differ about the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion." *Stephenson v. Countryside Townhomes, LLC*, 437 S.W.3d 380, 389 (Mo. App. 2014). "We review for prejudice, not mere error, and will reverse only if the error was so prejudicial that the defendant was deprived of a fair trial." *Peters v. ContiGroup*, 292 S.W.3d 380, 392 (Mo. App. 2009).

A motion in limine is interlocutory in nature and to preserve the issues in the motion, the party must lodge a specific objection during trial to the introduction of evidence comprising the basis of the motion. *Estate of Gross v. Gross*, 840 S.W.2d 253, 260 (Mo. App. 1992) (internal citation omitted). "The objection must be specific and made contemporaneously with the purported error." *Dugan v. Hyatt Corporation*, 707 S.W.3d 669, 679 (Mo. App. 2024) (internal citation omitted). "By presenting a specific objection, a party ensures the circuit court is apprised of the rationale for the objection and may make an informed ruling." *Rhoden v. Missouri Delta Medical Center*, 621 S.W.3d 469, 484 (Mo. banc 2021). "Where evidence is admitted without objection, the party against whom it is offered waives any objection … and it may be properly considered even if the evidence would have been excluded upon a proper objection." *Wilkins v. Board of Regents of Harris-Stowe University*, 519 S.W.3d 526, 541 (Mo. App. 2017). "An appellant's failure to preserve an issue at the trial court waives the issue, and

8

it is not reviewable on appeal." *Kerr v. Missouri Veterans Commission*, 537 S.W.3d 865, 880 (Mo. App. 2017).

First, Brothers did not preserve this issue. Becker's first assertion that the cows had never escaped occurred during opening statement. Brothers did not object. On the second day of trial, Brothers reargued his motion in limine to exclude any testimony that no prior escapes had occurred which the court denied again.

Then, during the remainder of trial, this evidence arose nine more times but Brothers objected to only four of those questions. And, Brothers asked Sam, "Are you saying cows never went through that panel?" to which Sam replied, "Never." Based on Brothers's half-hearted and sporadic objections, and because Brothers elicited this testimony himself during cross-examination of Sam, we find no prejudice occurred. *Peters*, 292 S.W.3d at 392. Point denied.

*Point Three - Expert Ogden's excluded testimony*

Finally, Brothers asserts that the trial court erred in excluding expert Brandon Ogden's testimony as to defects in Becker's fence which he claimed rendered the fence in violation of the Missouri Fence Act and his authentication of photographs taken in December 2023 showing what he considered to be the fence's poor condition. While we agree that testimony and those photographs should have been allowed, we find the error non-prejudicial because the court allowed Ogden to testify at length regarding the fence's condition and its purported defects.

9

*Standard of Review*

This Court reviews the trial court's decision whether to admit or exclude expert testimony for an abuse of discretion. *Gebhardt v. Am. Honda Motor Co., Inc.*, 627 S.W.3d 37, 43 (Mo. App. 2021). Evidence must be both "logically and legally relevant to be admissible." *McGaughy v. Laclede Gas Co.*, 604 S.W.3d 730, 758 (Mo. App. E.D. 2020). "Evidence is logically relevant if it tends to make the existence of any consequential fact more or less probable, or if it tends to corroborate evidence which itself is relevant and bears on the principal issue of the case." *Id*. "Evidence is legally relevant if its probative value outweighs any prejudicial effect on the jury." *Id*. Thus, legal relevance weighs the probative value of the evidence against its costs – unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *State v. Anderson*, 76 S.W.3d 275, 276 (Mo. banc 2000).

We find that the photographs and Ogden's testimony about the fence's overall condition to be relevant to the adequacy of the fence and the adequacy of Becker's fence maintenance practices. Ogden testified that since the Beckers' fence was in a similar condition in 2023 when he inspected and photographed it as it was in 2018, the fence was poorly maintained at the time of the accident. Critically, Becker "opened the door" to this evidence when he testified that the fence was in the same condition in 2023 as it was 2018.

But we do not find that this erroneous evidence exclusion was prejudicial. *Peters*, 292 S.W.3d at 392. Ogden opined to the jury that the panel gate was inadequate – specifically, he testified that the woven wire panel used Becker used was typically used

10

for smaller livestock such as sheep, goats, and pigs and that it could easily fall over. Moreover, he testified that a metal gate was more appropriate and in line with industry standards. Thus, Brothers was able to apprise the jury of Ogden's opinions as to the fence's inadequacies even without the excluded testimony involving the 2023 photographs. *Id.* Point denied.

## Conclusion

For the reasons set forth above, we affirm.

_____
JAMES M. DOWD, JUDGE

Rebeca Navarro-McKelvey, P.J., and
Gary M. Gaertner, Jr., J. concur.