**STATE of Missouri, DEPARTMENT OF SOCIAL SERVICES, DIVISION OF MEDICAL SERVICES, Appellant,**

v.

**Donald Lee BRUNDAGE, Respondent.**

**No. WD 60535.**

Missouri Court of Appeals,
Western District.

July 16, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 22, 2002.

Application for Transfer Denied
Oct. 22, 2002.

---

Carolyn Hajaved Kerr, Division of Legal Services, Jefferson City, for Appellant.

Carlyle L. Foley, Daniel Ray Dunham, Columbia, for Respondent.

RONALD R. HOLLIGER, Judge.

Vincent Brundage died in February 1998, leaving a small estate. Respondent Donald Brundage ("Brundage") filed an "Affidavit to Establish Distributees of Decedent Where Total Estate Is Less than $40,000.00" (the "small estate affidavit") on May 11, 1998.[1] The decedent's will was admitted to probate on May 18, 1998, but no application for letters testamentary was filed, nor was full administration of the estate sought by any interested party. Notice to creditors was published in a county newspaper on May 30 and June 6, 1998, but no claims were filed. Distribution of the decedent's assets was apparently made several weeks later.

---

1. It is not clear from the record whether Brundage posted a bond under § 473.097, or whether the probate court found that a bond was unnecessary.

On September 17, 1998, appellant, Division of Medical Services ("DMS"), filed a claim in the probate court seeking to recover $41,492.85 from the estate for Medicaid assistance paid to the decedent and his predeceased spouse. DMS sent a demand letter to counsel for Brundage and the other distributees on the following day. Correspondence was apparently exchanged between the attorney and DMS over the following months in an attempt to settle the claim,[2] but the claim was never paid. There appears to be no serious dispute regarding the validity of DMS' claim or of the amount of DMS' claim. The stumbling block in resolving the claim was the distributees' request that DMS execute a quitclaim deed releasing any interest it had to the real property in the estate. Because the amounts offered by distributees ($10,000 from sale of the real property plus $2,208.84 from liquidated personal property) would not completely satisfy DMS' claim, the distributees contended that a quitclaim deed was necessary to render the real estate title marketable. DMS refused to execute the quitclaim deed, believing it unnecessary as it had no lien on that property. Due to DMS' refusal, it never received any of the proposed payment from the distributees.

Over two years after the decedent's death, on June 17, 2000, DMS filed an amended claim with the probate court changing the amount sought to $33,662.73. (There is no explanation offered by DMS for the amended filing.) It sought to call the amended claim for hearing, but Brundage and the other distributees argued that DMS' only remedy was to file an application for full administration of the estate under § 473.020, RSMo. As the time to seek full administration had elapsed, they also argued that DMS' claim was time barred. The probate court agreed and dismissed DMS' claim with prejudice on February 9, 2001. This dismissal was not appealed by DMS.

Subsequently, on April 11, 2001, DMS filed a petition in circuit court seeking to recover against Brundage in his capacity as the affiant in the small estate affidavit. The substantive allegations of the petition were that: (1) Brundage had promised, in the affidavit, to pay all unpaid debts owed by the estate; and (2) Brundage had failed to pay the state's claim, despite notice of the claim. DMS, therefore, claimed that Brundage was liable to DMS for failing to satisfy the debt owed by the estate.

Brundage filed a motion to dismiss DMS' petition for failure to state a claim. The motion to dismiss was ultimately granted by the court.[3] DMS now appeals that dismissal.

### Standard of Review

DMS incorrectly claims that the standard of review in this matter is supplied by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). This error may be due to the fact that DMS mischaracterizes the cause as having been "heard without a jury pursuant to Rule 73.01." This is not accurate, as the case was dismissed by the court for failure to state a claim. The merits of the case were not reached by the trial court. Thus, *Murphy v. Carron* is not applicable to the present matter.

2. Brundage filed a motion to strike this correspondence as inadmissible settlement negotiations, but it is not clear whether the trial court ruled upon that motion.

3. Although the trial court did not denominate the dismissal as a dismissal with prejudice, we reach the merits of the case under the rationale articulated in *State ex rel. Hazelwood Yellow Ribbon Comm. v. Klos,* 35 S.W.3d 457, 464 (Mo.App.2000).

The proper standard of review applicable to an appeal of a trial court's dismissal for failure to state of claim is discussed in *Nazeri v. Missouri Valley College*, 860 S.W.2d 303 (Mo. banc 1993):

A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. It assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. No attempt is made to weigh any facts alleged as to whether they are credible or persuasive. Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.

*Id.* at 306 (internal citation omitted). The facts alleged in the petition are viewed in the light most favorable to the plaintiff. *See Sullivan v. Carlisle*, 851 S.W.2d 510, 512 (Mo. banc 1993). If the facts and the reasonable inferences drawn therefrom state any ground for relief, then we must reverse the dismissal and remand for further proceedings. *Id.*

### Adequacy of DMS' Brief
### Under Rule 84.04(d)

Before looking to the specific issues raised by DMS' appeal, it should be noted that Brundage urges this court to dismiss the appeal for failure to comply with Rule 84.04(d). That Rule describes three essential components to each point on appeal. First, the point must state the specific trial court action that is challenged. Second, the point must state how that action was erroneous. Third, the point must show why the error requires reversal of the trial court. Brundage claims that DMS has failed to comply with Rule 84.04(d)(1)(C), which requires that each point on appeal "explain in summary fashion why, in the context of the case, those legal reasons [asserted by the Appellant] support the claim of reversible error."

DMS' first point on appeal states:

The trial court erred in dismissing the Department's cause of action because the Department asserted valid claims against the affiant in that the state, as a creditor must and does have various means by which to collect its debt, including filing suit against the affiant for failing to meet his obligations under § 473.097, RSMo, and, alternatively, for failing to keep his common law promise to pay a creditor of the estate.

This point meets at least two of the requirements of Rule 84.04(d). It identifies an alleged error, the dismissal of DMS' petition. It also arguably states the nature of the error, that dismissal was inappropriate because DMS stated a cause of action. This first point, however, does not clearly explain why the trial court must be reversed. Instead, the point launches into a discussion of whether DMS has a claim against Brundage.

DMS' second and third points on appeal state:

The trial court erred in dismissing the Department's cause of action because the Department, as a creditor of the estate must have a legal recourse against the affiant for his knowing failure to pay a lawful claim against the estate, in that an affiant operating under § 473.097, RSMo, should be bound by the same duties and obligations to collect the assets of the decedent and distribute them to the creditors and distributees of the estate as a personal representative does under § 473.270, RSMo, and should, therefore, be treated by the court in the same manner.

\* \* \*

The trial court erred in dismissing the Department's cause of action because

the Department possessed the authority to assert and collect its claim from and against the estate of Vincent Lee Brundage in that federal and state statutes mandate the Department to recover Medicaid assistance paid to or on behalf of a Medicaid recipient and his predeceased spouse during their lifetimes from the estate of the last-surviving spouse.

These points on appeal both fail to meet two of the requirements of Rule 84.04(d). They do not specifically identify how the trial court erred, but instead are affirmative claims that DMS should have legal recourse to seek reimbursement against Brundage and is required by federal law to seek such reimbursement. In essence, these latter points merely offer policy and legal reasons in support of permitting DMS to seek reimbursement from a small estate affiant but do not themselves set up any independent allegations of error.

### Discussion

Despite the deficiencies in DMS' stated points on appeal, we decline to exercise our jurisdiction to dismiss DMS' appeal. Its first point on appeal does raise an arguable claim of error by the trial court. Further, the specifics of that claim of error are clear from the argument portion of the brief and there is no confusion of the issues involved. As such, the deficiencies do not impede our resolution of the issues. *See Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo. banc 1997). Under similar circumstances, we have previously stated that "because it is our preference to dispose of cases on the merits rather than to dismiss them for deficiencies in the briefs." *Robin Farms v. Bartholome*, 989 S.W.2d 238, 245 (Mo.App.1999) (citing *Jordan v. Stallings*, 911 S.W.2d 653, 664 (Mo.App. 1995)). DMS' first point on appeal will therefore be addressed upon its merits. The remaining two points will be disre-

garded, given they do not present any claims of trial court error. The motion to dismiss is denied.

Accordingly, DMS' appeal presents us with the sole question of whether its petition stated a claim against Brundage. This requires resolution of two related issues. First, we must determine whether, under the facts pled, DMS has a claim against Brundage under any legal or equitable basis. Second, we must determine whether DMS' petition sufficiently pled that claim.

■ DMS claims that it has a right to recover against Brundage for his failure to pay the debts of the decedent. DMS appears to contend that this "right" arises either from § 473.097, RSMo (which indicates that the debts of the decedent are to be paid prior to distribution of the remainder of the estate to the heirs/distributees), or from Brundage's failure to comply with the affidavit he filed with the probate court (which stated that he would satisfy all debts of the deceased). In essence, DMS claims that its petition states a claim against Brundage arising either under statutory grounds or the doctrine of promissory estoppel.

We first address DMS' claim that it has a cause of action based upon § 473.097, RSMo. That statute clearly requires that a decedent's estate be liquidated by the affiant to the extent necessary to pay the debts of the decedent and of the estate:

The *affiant* shall collect the property of decedent described in the affidavit. The property of decedent shall be liquidated *by the affiant* to the extent necessary to pay debts of decedent. If the decedent's property is not sufficient to pay such debts, abatement of the shares of the distributes shall occur in accordance with section 473.620. The *affiant* shall distribute the remaining property

to such persons identified in the affidavit as required in subdivision (5) of subsection 2 of this section who are entitled to receive the specific items of personal property as described in the affidavit, or to have any evidence of such property transferred to such persons. To the extent necessary to facilitate distribution, the *affiant* may liquidate all or part of decedent's property.

§ 473.097.7, RSMo (emphasis added). The statute, however, does not clearly indicate what consequences flow from a failure to pay any of the decedent's debts. The preceding subsection of the statute provides that:

Upon compliance with the procedure required by this section, the personal property and real estate involved shall not thereafter be taken in execution for any debts or claims against the decedent, but such compliance has the same effect in establishing the right of distributees to succeed .to the property as if complete administration was had; but nothing in this section affects the right of secured creditors with respect to such property.

§ 473.097.6, RSMo. This statutory language suggests that if the statutory procedure is not complied with, then the property distributed may not lie beyond the reach of creditors. It does not indicate, however, how a creditor is to proceed when the affiant has failed to pay the debt owed by the decedent to that creditor. The statute does not explicitly authorize an action by a creditor against the affiant. Lacking such grounding, DMS turns instead to policy arguments to urge this court to read into the statute a cause of action against affiants by aggrieved creditors.

There are no procedures for litigating disputed claims within the small estate statutes. As such, the statutes provide no express guidance for those situations in which a creditor's claim is disputed or, as was apparently the case here, the creditor and the affiant were unable to reach a mutually agreeable settlement of the claim. Brundage suggests that this court should take the position that, under such circumstances, it is the responsibility of the creditor to seek formal administration of the estate. Through formal administration, the creditor can obtain allowance of its claim against the estate.

DMS suggests that barring its present claim against Brundage would permit affiants to evade having to pay the debts of a decedent, by waiting a year (or more) after the decedent's death before seeking small estate distribution. As full administration may be sought no later than one year from the decedent's death, DMS contends that creditors would not have sufficient time to determine if their claims were disputed before seeking full administration. Brundage points out, however, that DMS did not need to wait for him to act, as it could have filed its own request for formal administration of the estate within the one-year deadline. Indeed, DMS filed a claim with the probate court within months of the decedent's death but never apparently investigated whether a full administration had been initiated.

DMS' position would also encourage creditors to be less than diligent in pursuing their claims subsequent to a debtor's death. Indeed, Brundage suggests that permitting DMS to assert its claim would permit creditors to evade the statutory time limitations imposed upon claims in probate matters. Under DMS' argument, a creditor to a small estate would not need to take any action to have the estate placed under formal administration by the court but would merely need to wait until small estate distribution had taken place before filing suit against the small estate

affiant. Rather than being bound by the nonclaim statute, creditors would be able to take advantage of the substantially longer statutes of limitations applicable to civil actions.

In our view, such a sequence of events would appear to evade the intent of the probate code in providing procedures to promptly resolve the final debts of a decedent and to distribute the decedent's estate to their heirs. Specifically, DMS' argument appears irreconcilable with § 473.444, RSMo.[4] This statute provides that any claim[5] against a decedent's estate becomes "unenforceable and . . . forever barred against the estate, the personal representative, the heirs, devisees and legatees of the decedent" one year after the decedent's death. *Id.* This limitations period is not contingent upon the commencement of formal administration of the decedent's estate within that period. *Id.*

We are not unsympathetic with DMS' contention that it attempted to reach a settlement with Brundage regarding the decedent's debt, and we understand that those attempts extended beyond the expiration of the one-year deadline for seeking full administration. We see no reason to doubt that either party sought, in good faith, to negotiate a settlement of the claim. Nevertheless, it is inescapable that DMS had an opportunity to seek full administration of its claim yet failed to do so.

■ As the probate statutes provide a mechanism for creditors to seek satisfaction of disputed claims, we decline to accept DMS' invitation to interpret the small estate statutes as giving creditors a cause of action against affiants for failure to pay the debts of decedents. Had the legislature intended to grant creditors such a cause of action, it could readily have included suitable language in the statutes and have provided a procedure for resolution of disputed claims. "The creation of a private right of action by implication is not favored, and the trend is away from judicial inferences that a statute's violation is personally actionable." *Shqeir v. Equifax,* 636 S.W.2d 944, 947 (Mo. banc 1982). We are not permitted to "engraft upon the statute provisions which do not appear in explicit words or by implication from the words in the statute." *Wilson v. McNeal,* 575 S.W.2d 802, 810 (Mo.App.1978).

We, therefore, conclude that the small estate procedures within the probate code do not provide for a cause of action by creditors seeking recovery for debts unpaid by small estate affiants. Accordingly, we hold that the trial court correctly found that DMS' petition failed to state a claim for relief upon this basis.

■ In its second argument in support of its first point on appeal, DMS contends it stated a cause of action against Brundage for promissory estoppel. There are four elements to promissory estoppel: "(1) a promise; (2) promisee detrimentally relies on the promise; (3) promisor could reasonably foresee the precise action the promisee took in reliance; and (4) injustice can only be avoided by enforcement of the promise." *Prenger v. Baumhoer,* 939 S.W.2d 23, 26 (Mo.App.1997). The prom-

4. The limitations period within § 473.444, RSMo, does not appear to be directly applicable to DMS' claim, under the rationale of *In re Estate of Thomas,* 743 S.W.2d 74 (Mo. banc 1988). Nevertheless, in considering whether we should infer a statutory cause of action against small estate affiants, we consider the limitations period of the statute to be highly persuasive of a legislative intent to encourage prompt filing of claims against a decedent's estate.

5. Except claims for cost and expenses of administration, exempt property, family or homestead allowance, and claims asserted by the United States or any taxing authority.

**50** 

ise must be definite and be of a contractual nature. *Id.* As stated at the outset, we will assume the facts alleged in DMS' petition are true in evaluating whether it has stated a claim for promissory estoppel.

██ DMS' brief is silent as to how the facts alleged in its petition met the elements of promissory estoppel. Indeed, examination of the petition reveals that promissory estoppel was not even pled as a cause of action. Despite this omission, we must find that the petition stated a claim if the elements of a promissory estoppel are met by the petition. *See Nazeri v. Mo. Valley Coll.,* 860 S.W.2d at 306. Unfortunately, even a generous reading of the petition leads to the conclusion that DMS' allegations fail to set forth the elements of such a claim. Specifically, nowhere does DMS allege in its petition that it relied upon any promise made by Brundage. It is also questionable whether the petition actually alleges the existence of a "promise" made by Brundage. At best, the petition asserts the existence of a settlement offer made by Brundage, which DMS, in turn, refused to accept. In short, DMS' petition fails to state a claim for promissory estoppel.

As DMS' petition fails to state a claim under either theory advanced on appeal, we hold that the trial court committed no error in dismissing the petition against Brundage. Accordingly, that dismissal is hereby affirmed.

LISA WHITE HARDWICK, Presiding Judge, and JOSEPH M. ELLIS, Judge, concur.