In the Matter of Lloyd FOWLER, Jr.,
Deceased, Richard J. Koury, II,
Appellant,

v.

Debra Corn, Respondent.

No. WD 75394.

Missouri Court of Appeals,
Western District.

April 16, 2013.

Richard J. Koury, II, Appellant Acting Pro Se, Independence, MO, for appellant.

L. Clay Barton, Oak Grove, MO, for respondent.

Before Division One: MARK D. PFEIFFER, P.J., and VICTOR C. HOWARD and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Respondent Debra Corn, daughter of Lloyd Fowler, Jr., filed a small-estate affidavit in the probate division of the Circuit Court of Jackson County on February 22, 2011, following Fowler's death on January 13, 2011. On May 16, 2012, Appellant Richard Koury filed a motion to enforce a settlement agreement he contended he had reached with Corn, concerning a claim against Fowler's estate. A commissioner in the probate division dismissed Koury's claim, and his motion to enforce the pur-

ported settlement of the claim, finding that no procedures exist within the small-estate statutes to litigate and dispose of contested claims. The circuit court confirmed the orders of the probate division, and Koury appeals. We affirm.

## Statutory and Factual Background

Missouri's probate code creates a streamlined process for the payment of claims and the distribution of assets in situations in which a decedent leaves an estate valued at no more than $40,000. *See* §§ 473.097–473.107.[1] The small-estate procedures do not require that the estate be opened for full administration, if the conditions specified in § 473.097.1(1) are satisfied.

■ To commence a small-estate proceeding, § 473.097.2 requires that the personal representative of the estate, or any distributee of the estate in the absence of a personal representative, file an affidavit containing the following statements and information:

(1) That the decedent left no will or, if the decedent left a will, that the will was presented for probate within the limitation periods specified in section 473.050;

(2) That all unpaid debts, claims or demands against the decedent or the decedent's estate and all estate taxes due, if any, on the property transfers involved have been or will be paid, except that any liability by the affiant for the payment of unpaid claims or demands shall be limited to the value of the property received;

(3) An itemized description and valuation of property of the decedent[, ex-

cepting] ... property which was held by the decedent as a tenant by the entirety or a joint tenant at the time of the decedent's death;

(4) The names and addresses of persons having possession of the property;

(5) The names, addresses and relationship to the decedent of the persons entitled to and who will receive, the specific items of property remaining after payment of claims and debts of the decedent, included in the affidavit;

(6) The facts establishing the right to such specific items of property as prescribed by this section.

If the property is valued at more than $15,000, the clerk of the court is required to publish in a general-circulation newspaper a "notice to creditors of the decedent to file their claims in the court or be forever barred." § 473.097(5).[2] The statutory notice advises creditors "that section 473.444 sets a limitation period that would bar claims one year after the death of the decedent," and that "[a] creditor may request that this estate be opened for administration." *Id.*

The statutes direct the circuit clerk to annex a certificate to the small-estate affidavit, or endorse it on the affidavit, stating: the names and addresses of the persons entitled to the decedent's property; whether a will has been probated or that no will has been presented to the court; and that any applicable estate taxes have been paid. § 473.097.2. The probate division may, in its discretion, order an appraisal of the estate's property prior to issuance of the clerk's certificate. § 473.107.

---

**1.** Unless otherwise indicated, statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, as updated through the 2012 Cumulative Supplement.

**2.** Due process principles require additional notice, beyond the notice by publication specified in § 473.097.5, with respect to creditors whose identities are known or reasonably ascertainable. *Estate of Bohannon,* 943 S.W.2d 651, 654–55 (Mo. banc 1997).

The small-estate statutes require the affiant to collect the decedent's assets, pay claims against the estate, and distribute the remaining assets to the persons specified in the affidavit. § 473.097.7. The affiant is also authorized to liquidate assets as necessary to satisfy claims or facilitate distributions. *Id.* Distributees can establish their right to succeed to the decedent's real property "by filing a copy of the foregoing affidavit and certificate of the clerk in the office of the recorder of deeds of each county where the real property is situated." § 473.097.4. The statutes also provide that,

> Upon compliance with the procedure required by this section, the personal property and real estate involved shall not thereafter be taken in execution for any debts or claims against the decedent, but such compliance has the same effect in establishing the right of distributees to succeed to the property as if complete administration was had; but nothing in this section affects the right of secured creditors with respect to such property.

§ 473.097.6.

The small-estate statutes contain no procedures for the litigation or resolution of disputes over claims.

In this case, Lloyd Fowler, Jr. died intestate on January 13, 2011. On February 22, 2011, Fowler's daughter Debra Corn filed a small-estate affidavit in the probate division of the circuit court of Jackson County. The affidavit included all of the elements required by § 473.097.2. The only asset noted in the affidavit was a parcel of real property located in Independence, with a reported value of $30,000. The affidavit listed two distributees, Corn and her brother Doug Fowler.

The notice to creditors required under the statute was published on March 22, 2011.

On June 8, 2011, Richard Koury filed a Claim Against Estate in the amount of $5,185.65. Koury claimed that Fowler contracted to purchase a 2004 Cadillac Escalade from Koury in February of 2010. The contract price was alleged to be $24,000. According to Koury's claim, Fowler paid Koury a $1,000 deposit, but notified Koury on May 3, 2010, that he could not perform the contract. Koury's claim alleged that he sold the vehicle to a third party for $18,000 on August 21, 2010. Koury calculated the $5,185.65 claim amount based on the difference between the contract price for the vehicle and its ultimate sale price, plus Koury's sale-related expenses of $185.65, minus the $1,000 deposit Fowler had previously paid.

On September 14, 2011, the attorney representing the estate sent a letter to Koury which read in full, "[t]he personal representative will consent to the judgment in the estate of Lloyd Fowler. If you will submit to me a proposed consent I will get it signed and filed." The record does not reflect that Koury ever tendered any "proposed consent" to the estate's counsel.

On May 16, 2012, Koury filed a Motion to Enforce Settlement Agreement, alleging that he had been told repeatedly by the estate's attorney that the claim was settled, and that counsel's September 24, 2011 letter confirmed the existence of a settlement agreement. In response, the estate's counsel filed a trial brief which argued that this Court's decision in *Missouri Department of Social Services v. Brundage*, 85 S.W.3d 43 (Mo.App. W.D.2002), was dispositive of the court's authority to resolve Koury's Motion. Counsel also submitted an affidavit which stated that he had discussed Koury's claim with Doug Fowler, the decedent's son and the brother of the affiant Debra Corn (but presumably had

not discussed the claim with Corn herself). The affidavit states that "[t]he letter written to Richard J. Koury II on September 14, 2011[, which indicated Corn's willingness to consent to Koury's claim,] is not accurate."

On June 6, 2012, a commissioner in the probate division dismissed Koury's June 8, 2011 claim. The commissioner noted that Koury had never petitioned the probate division to open Fowler's estate for full administration; relying on *Brundage*, the commissioner concluded that Koury's claim was therefore barred because "[t]here is no procedure in a small estate proceeding for the Court to allow or deny contested claims." The commissioner dismissed Koury's Motion to Enforce Settlement Agreement on the same day for similar reasons.

On July 9, 2012, the circuit court confirmed the commissioner's orders. Koury appeals.[3]

## Analysis

Koury's appeal of the probate division's dismissal of his claim presents solely legal issues which we review *de novo*. *See, e.g., Doe ex rel. Subia v. Kansas City, Mo. Sch. Dist.*, 372 S.W.3d 43, 47 (Mo.App. W.D.2012).

Koury first argues that the small-estate statutes authorize the filing of claims against a small estate. We agree: the small-estate statutes make multiple references to the filing and payment of "claims" against an estate, and § 473.097.5 expressly requires notice to creditors advising them "to file their claims in the court or be forever barred."

The critical issue here is not whether claims may be filed against the estate, however. Instead, the issue is whether *disputes over claims* can be resolved in the context of the small-estate proceeding itself. On this issue, our prior decision in *Brundage* is dispositive.

In *Brundage*, a small-estate affidavit was filed with respect to the estate of Vincent Brundage, who died in February, 1998. 85 S.W.3d at 44. The Missouri Division of Medical Services ("DMS") filed a claim for Medicaid assistance paid to the decedent on September 17, 1998. *Id.* at 45. DMS and Brundage's estate exchanged correspondence over the next several months in an effort to reach a settlement of DMS's claim. *Id.* Our opinion notes that

[t]here appears to be no serious dispute regarding the validity of DMS' claim or of the amount of DMS' claim. The

---

3.  Corn argues that we lack appellate jurisdiction because the small-estate proceeding remains pending in the probate division, and no clerk's certificate has been issued. As a general proposition, appeals of orders issued by the probate division are prohibited until a decree of final distribution has been entered. *See, e.g., In re Estate of Ginn*, 323 S.W.3d 860, 862–864 (Mo.App. W.D.2010); *Estate of Straszynski*, 265 S.W.3d 394, 395 (Mo.App. S.D.2008)(citing *Bosworth v. Sewell*, 918 S.W.2d 773, 776 (Mo. banc 1996)). In § 472.160.1, however, the General Assembly has authorized appeals from certain interlocutory probate orders, including orders "[o]n the allowance of any claim against an estate exceeding one hundred dollars," or orders

denying such relief. §§ 472.160.1(1), (13). The probate division's dismissal of Koury's claim, and his Motion to Enforce Settlement, had the effect of disallowing that claim; the probate division's judgment is therefore appealable under §§ 472.160.1(1) and (13). *In re Estate of Forhan*, 149 S.W.3d 537, 541 (Mo.App. S.D.2004) (order denying extension of time for filing of claim against estate, and ruling that claim was barred by applicable statute of limitations, appealable under §§ 472.160.1(1) and (13)). Koury filed his notice of appeal on July 13, 2012, within ten days of the entry of the circuit court's judgment confirming the dismissal of Koury's claim and related motion. *See In re Kraus*, 318 S.W.3d 274, 276–78 (Mo.App. W.D.2010).

stumbling block in resolving the claim was the distributees' request that DMS execute a quitclaim deed releasing any interest it had to the real property in the estate. Because the amounts offered by distributees . . . would not completely satisfy DMS' claim, the distributees contended that a quitclaim deed was necessary to render the real estate title marketable. DMS refused to execute the quitclaim deed, believing it unnecessary as it had no lien on that property.

*Id.* As a result of the disagreement concerning whether DMS would execute a quitclaim deed, the parties were unable to settle its claim. *Id.*

Over two years after Brundage's death, the DMS filed an amended claim which reduced the monetary amount it was seeking. *Id.* DMS sought to call a hearing on the amended claim. *Id.* The distributees argued, however, that DMS's only remedy with respect to a disputed claim was to file a petition for full administration of Brundage's estate under § 473.020, and that, under § 473.020.2, DMS's right to seek full administration expired one year after Brundage's death. *Id.* The probate division agreed, and dismissed DMS's claim. *Id.*

DMS did not appeal the dismissal. Instead, on April 11, 2001—over three years after Brundage's death—DMS filed a separate petition in the circuit court seeking to recover against the small-estate affiant, on the basis that the affiant had failed to fulfill his obligation to pay all claims against the estate as required by § 473.097, and as promised in his small-estate affidavit. *Id.* at 45.

We held that neither the obligations placed on a small-estate affiant under § 473.097, nor the assurances made by the affiant in his or her affidavit, created a private right of action on behalf of creditors whose claims were unpaid. Instead, we emphasized that the small-estate statutes contemplate that creditors whose claims are unresolved will initiate formal administration of the decedent's estate within the one-year period specified in § 473.020.2, or be barred from proceeding under the estate statutes. We explained:

There are no procedures for litigating disputed claims within the small estate statutes. As such, the statutes provide no express guidance for those situations in which a creditor's claim is disputed or, as was apparently the case here, the creditor and the affiant were unable to reach a mutually agreeable settlement of the claim. Brundage suggests that this court should take the position that, under such circumstances, it is the responsibility of the creditor to seek formal administration of the estate. Through formal administration, the creditor can obtain allowance of its claim against the estate.

DMS suggests that barring its present claim against Brundage would permit affiants to evade having to pay the debts of a decedent, by waiting a year (or more) after the decedent's death before seeking small estate distribution. . . . Brundage points out, however, that DMS did not need to wait for him to act, as it could have filed its own request for formal administration of the estate within the one-year deadline.

DMS' position would also encourage creditors to be less than diligent in pursuing their claims subsequent to a debtor's death. Indeed, Brundage suggests that permitting DMS to assert its claim would permit creditors to evade the statutory time limitations imposed upon claims in probate matters. Under DMS' argument, a creditor to a small estate would not need to take any action to have the estate placed under formal ad-

ministration by the court but would merely need to wait until small estate distribution had taken place before filing suit against the small estate affiant. Rather than being bound by the nonclaim statute, creditors would be able to take advantage of the substantially longer statutes of limitations applicable to civil actions.

In our view, such a sequence of events would appear to evade the intent of the probate code in providing procedures to promptly resolve the final debts of a decedent and to distribute the decedent's estate to their heirs....

....

As the probate statutes provide a mechanism for creditors to seek satisfaction of disputed claims, we decline to accept DMS' invitation to interpret the small estate statutes as giving creditors a cause of action against affiants for failure to pay the debts of decedents.... We are not permitted to engraft upon the statute provisions which do not appear in explicit words or by implication from the words in the statute.

85 S.W.3d at 48–49 (citation and internal quotation marks omitted).[4]

*Brundage* holds that where a claim is disputed, or where the creditor and the estate are unable to reach a mutually agreeable settlement, creditors must petition to have the estate opened for full administration within one year of the decedent's death in order to preserve their rights against the estate. Koury argues that this case is distinguishable from *Brundage,* because in this case the affi-

ant's attorney assured Koury (apparently without his client's consent) that the claim was settled, and thereby lulled Koury from seeking full administration until it was too late to do so. Similar circumstances existed in *Brundage,* however. There too, the parties had apparently reached agreement as to the validity of DMS's claim, and the amount to be paid to satisfy that claim; all that remained was for the parties to resolve the details of how the settlement of the claim would be documented. We nevertheless held that DMS was barred from proceeding under the small-estate statutes, because it had failed to seek administration of the estate within the statutory time limits:

We are not unsympathetic with DMS' contention that it attempted to reach a settlement with Brundage regarding the decedent's debt, and we understand that those attempts extended beyond the expiration of the one-year deadline for seeking full administration. We see no reason to doubt that either party sought, in good faith, to negotiate a settlement of the claim. Nevertheless, it is inescapable that DMS had an opportunity to seek full administration of its claim yet failed to do so.

*Id.* at 49.

Koury also argues that this case is distinguishable from *Brundage,* because he reached an enforceable settlement with the affiant. Whether an enforceable settlement agreement was reached is itself a contested issue, however; and as we explained in *Brundage,* the small-estate statutes do not contain procedures for the

4. *Hatfield v. McCluney,* 893 S.W.2d 822, 826 (Mo. banc 1995), and *Young v. Perkins,* 993 S.W.2d 590, 593–94 (Mo.App. S.D.1999), similarly recognize that under § 473.020 a creditor may petition to have an estate opened for administration where no estate proceeding is otherwise initiated, and may be barred from pursuing claims against the estate if it fails to do so. For examples of cases in which creditors initiated such probate proceedings, *see, e.g., Estate of Givens,* 234 S.W.3d 519, 522–24 (Mo.App. E.D.2007); *State ex rel. Mo. Dep't of Soc. Servs. v. Kramer,* 215 S.W.3d 739, 740–42 (Mo.App. E.D.2007).

litigation of such disputed claims. Whether Koury can establish a right of recovery against the affiant based on an enforceable settlement agreement, or under the doctrine of promissory estoppel, is not a matter which can be litigated within the confines of a small-estate proceeding, and we take no position as to the merits of any such claims (which we understand Koury is presently litigating in the circuit court).[5] We also take no position as to whether Koury may have recourse under any bond Corn filed under § 473.097.1(3). We hold only that, because Koury had ample "opportunity to seek full administration of [his] claim yet failed to do so," *Brundage*, 85 S.W.3d at 49, he cannot seek to litigate his disputed claim, or the purported settlement of that claim, in the small-estate proceeding which Corn initiated.

## Conclusion

The judgment of the circuit court is affirmed.

All concur.

**5.** DMS also asserted a claim for promissory estoppel in *Brundage*; we held, however, that the claim had not been properly pled. 85 S.W.3d at 48–49.

Although *Brundage* held that § 473.097, and the affidavit required by the statute, create no private cause of action, the statute appears to contemplate that the affiant may face liability for unpaid claims in certain (unspecified) circumstances: § 473.097.2(2) requires the affidavit to state that "any liability by the affiant for the payment of unpaid claims or demands shall be limited to the value of the property received." The small-estate statutes may also contemplate that distributees are responsible for their receipt of estate assets to which others have a superior interest. *See* § 473.097.1(3) (specifying that surety bond will be conditioned on distributees delivering any property to which they are not entitled "to the persons entitled to the property under the law"); § 473.100 (providing that "[a]ny person to whom payment, delivery, transfer or issuance is made is answerable and accountable therefor to any administrator or executor of the estate . . . or to any other person having a superior right"). Given the procedural posture of this case, we need not further consider such issues in this appeal.