**Francis J. RYCHNOVSKY, Appellant,**

v.

**Robin M. COLE, et al., Respondent.**

**No. WD 62061.**

Missouri Court of Appeals, Western District.

Oct. 28, 2003.

Robert W. Wheeler, Keytesville, MO, for appellant Rychnovsky.

Ronald N. Sweet, Columbia, MO, for Robin Cole, Anthony and Cornia Stephenson and Celeste Burgin.

Lorna L. Hilt, Columbia, MO, for respondent Tom Stewart.

Wade H. Ford, Jr. Columbia, MO, for Scott and Gregory Robinson.

Bernard T. Schmitt, Kansas City, MO, for Charles and Jane Roads.

Lawrence W. Ferguson, Columbia, MO, for Virgil and Rebecca Passmeyer.

Michael E. McCausland, Kansas City, MO, for Denise Davis.

Before HARDWICK, P.J., BRECKENRIDGE and SPINDEN, JJ.

LISA WHITE HARDWICK, Judge.

Francis Rychnovsky appeals the trial court's judgment dismissing all six counts of his petition for failure to state a claim. In the petition, Rychnovsky sought relief against his neighbors for property damage allegedly caused by their inadequate maintenance of a private gravity flow sewer line. Rychnovsky contends the court erred in dismissing his claims for determination of heirs, nuisance, strict liability, trespass, ejectment, and negligence because all substantive elements and essential facts were properly pled. We affirm in part and reverse in part.

FACTUAL AND PROCEDURAL HISTORY

Francis Rychnovsky is the owner of a home located at 634 West Logan in the West Logan Place Addition of Moberly, Missouri. The home sits at the bottom of a hill and shares a private gravity flow sewer line with at least seven other subdivision homes located up on the hill. In July 1999, the sewer line began draining raw sewage into the basement of Rychnovsky's home. The City of Moberly notified subdivision landowners, in February 2000, that leaks in the private sewer line had resulted in sewage running across the sidewalk and into a storm grate. By July 2000, Rychnovsky's basement was filled with untreated sewage.

On May 30, 2002, Rychnovsky filed a petition seeking damages and injunctive relief against the property owners ("defendants") who shared the private sewer line.[1] In Count I, the petition sought a "determination of heirs and ownership of property" regarding a decedent property owner, Eleanor Robinson. In Counts II through VI, the petition alleged Rychnovsky's home was damaged as a result of the property owners' collective failure to maintain the sewer line and sought relief under theories of nuisance, strict liability, trespass, ejectment, and negligence.

Rychnovsky voluntarily dismissed the petition against one of the defendants, Estella Stuart, after learning she no longer was a property owner in West Logan Place Addition at the time the alleged tortious acts occurred. All of the remaining defendants filed motions to dismiss the petition for failure to state a claim on which relief can be granted. The trial court sustained the motions and entered judgment dismissing the petition as to all counts and all

1. The property owners named as defendants were: Robin Cole, Celeste Burgin, Virgil and Rebecca Plassmeyer, Cole and Denise Davis, Charles and Jane Roads, Anthony and Corina Stephenson, Thomas and Estella Stuart, and Scott and Gregory Robinson as the putative heirs of decedent property owner Eleanor Robinson.

defendants. Rychnovsky appeals the judgment of dismissal with regard to all defendants except Estella Stuart.

## STANDARD OF REVIEW

A motion to dismiss is an attack on the petition and solely a test of the adequacy of the pleadings. *Wheeler v. Sweezer*, 65 S.W.3d 565, 568 (Mo.App. W.D.2002). Upon review of a judgment granting a motion to dismiss, we must determine if the facts pleaded and the reasonable inferences therefrom state any grounds for relief. *In re Estate of Clark*, 83 S.W.3d 699, 702 (Mo.App. W.D.2002). We assume the factual allegations are true and make no attempt to weigh credibility or persuasiveness. *Johnson ex rel. Wilken v. Jones*, 67 S.W.3d 702, 705 (Mo.App. W.D.2002). We review the petition in an almost academic manner to determine if the facts alleged meet the elements of a recognized cause of action or of a cause that might be adopted in that case. *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 306 (Mo. banc 1993). Our review is a *de novo* examination of whether the petition invokes principles of substantive law. *In re Estate of Clark*, 83 S.W.3d at 702.

Where, as here, the trial court does not provide reasons for dismissal of the petition, we presume the decision was based on grounds stated in the dismissal motions and will affirm if dismissal was appropriate on any grounds stated therein. *Duvall v. Lawrence*, 86 S.W.3d 74, 78 (Mo. App. E.D.2002).

## ANALYSIS OF CLAIMS

### Determination of Heirs

In Count I of his petition, Rychnovsky sought a determination of the heirs of Eleanor Robinson pursuant to Section 473.663 [2] of the probate code. The petition alleged Eleanor Robinson was one of the uphill property owners who failed to maintain the private gravity flow sewer line, and the resulting sewage seepage caused damage to Rychnovsky's home. Eleanor Robinson died on May 3, 2000, well after the damage from the sewage leaks began. Rychnovsky requested the court to determine the decedent's heirs so that he could assert the tort claims in Counts II through VI against the current owners of her property. The petition named Eleanor Robinson's sons, Scott and Gregory Robinson, as the putative heirs and defendants in interest.

In their motions to dismiss, defendants Scott and Gregory Robinson argued Section 473.663 does not entitle Rychnovsky to assert a probate claim for determination of heirs in this proceeding. Section 473.663 is a part of the probate code pertaining to the administration of decedent's estate. The statute permits an action to determine heirship of property where no administration was commenced on a decedent's estate, nor any will offered for probate, within one year after decedent's death. Section 473.663; *Estate of Fox*, 955 S.W.2d 945, 947–48 (Mo.App. S.D. 1997). It provides that the heirship action may be brought in probate court by "any person claiming an interest in [decedent's] property as an heir or through an heir." Section 473.633.

The trial court properly determined that Rychnovsky's petition failed to state a claim under Section 473.663. As an initial matter, the court lacked jurisdiction because the claim was not filed in probate court. Beyond that, the pleading itself was fatally deficient. No facts were alleged to establish that Rychnovsky claimed an interest in Eleanor Robinson's property as an heir or through an heir. The peti-

**2.** All statutory citations are to the Revised Missouri Statutes 2000.

tion merely sought to identify heirs to the property in order to bring claims for damages and injunctive relief against those heirs. Eleanor Robinson's property was not the subject of Rychnovsky's claim; rather the complaint arose because of Eleanor Robinson's alleged failure to maintain the private sewer line running across her property. Rychnovsky could only acquire an interest in the decedent's property if his damage claims were successful and he was allowed to levy against the property to collect on his judgment. This contingent interest was not based on his right of inheritance and, thus, did not give rise to a claim for determination of heirs pursuant to Section 473.633.

By virtue of his damage claims, Rychnovsky is essentially a creditor seeking satisfaction of disputed claims against the estate of Eleanor Robinson. Section 473.444 establishes a procedure for creditors to file such claims within one year of the decedent's death, after which the claims are "unenforceable and . . . forever barred against the estate . . . [and] the heirs." Rychnovsky's damage claims against Scott and Gregory Robinson were extinguished by this statute because he failed to file them within one year of Eleanor Robinson's death. His petition seeks to avoid the limitations period by alternatively invoking Section 473.663 to seek damages against the decedent's heirs.

Our court has declined to interpret other provisions of the probate code to create an exception to the one-year time bar of Section 473.444 unless explicitly stated in the statute. *State of Mo., Dep't. of Soc. Servs., Div. Of Med. Servs. v. Brundage*, 85 S.W.3d 43, 49 (Mo.App. W.D.2002). We discern no language or legislative intent in Section 473.663 to provide an alternative cause of action for a creditor whose claim is "forever barred" by Section 473.444. The plain language of Section 473.663 indicates it was only intended to provide relief for persons claiming an interest in the decedent's property as an heir or through an heir. Rychnovsky's status as a potential creditor does not qualify him for such relief. Count I of the petition was properly dismissed as to defendants Scott and Gregory Robinson because it failed to state a claim for determination of heirs.[3]

**Nuisance**

In Count II, Rychnovsky sought injunctive relief and damages against the defendants under a theory of "sewage nuisance." The petition alleged the defendants "failed to repair or remedy their defective sewage and waste systems," and thereby caused raw sewage to drain from the private gravity flow sewer line into Rychnovsky's basement. A dye test was used to determine that the basement sewage flowed from the defendants' properties. Count II further alleged that Rychnovsky's use and enjoyment of his property was "substantially and offensively invaded" by the odor and sight of the raw sewage. On appeal, Rychnovsky contends this pleading was sufficient to state a nuisance claim under Missouri law.

The tort of nuisance arises when a defendant's use of his or her property is so "unreasonable, unusual, or unnatural" that it substantially impairs the rights of another to enjoy his or her property. *Moore v. Weeks*, 85 S.W.3d 709, 716 (Mo.App. W.D.2002). Although the strict definition of nuisance refers to the defendant's unreasonable use of his property, the primary focus is on defendant's unrea-

---

**3.** The dismissal of Count I effectively dismissed Scott and Gregory Robinson from the lawsuit because the remaining Counts (II through VI) against them were contingent upon the determination of heirs claim.

sonable interference with the use and enjoyment of plaintiff's land. *Id.* There is no exact formula to determine the existence of a nuisance, but the relevant factual considerations include: the locality, character of the neighborhood, nature of the use, extent and frequency of the injury, and the effect of the defendants' conduct upon the enjoyment of life, health and property of those affected. *Id.* The discharge of sewage can constitute a nuisance when it interferes with the peaceable enjoyment of the plaintiff's premises. *Clark v. City of Springfield*, 241 S.W.2d 100, 105–07 (Mo. App.1951); *Bower v. Hog Builders, Inc.*, 461 S.W.2d 784, 796 (Mo.1970).

■ In their motions to dismiss, defendants argued Rychnovsky did not state a nuisance claim because he failed to plead any facts showing the defendants had a duty to maintain the sewer line. Defendants cited no precedent or other authority in support of the existence of such a "duty" under Missouri law. Our own review of the applicable law reveals no requirement to plead or prove a "duty" in nuisance cases.

Defendants recast this argument on appeal and now argue that Rychnovsky failed to plead facts showing the defendants had "control" over the sewer lines. Defendants cite *Rosenfeld v. Thoele*, 28 S.W.3d 446, 452 (Mo.App. E.D.2000), for the proposition that: "the test for liability for damage caused by a nuisance turns on whether the defendants were in control over the instrumentality alleged to constitute the nuisance." The issue of "control" arose in *Rosenfeld* because the defendants did not own the property from which the alleged nuisance originated. *Id.* at 451 The court reasoned that in order to show the defendants unreasonably interfered with the plaintiff's property, there must be some evidence of defendants' control over the "nuisance causing property." *Id.* at 452

The court expressly noted that such control could be shown through property "ownership or otherwise." *Id.*

In his petition, Rychnovsky pled facts showing that the defendants owned the neighboring properties. The petition recited full legal descriptions which indicated that sewer line easements ran across each of the neighboring properties. Rychnovsky alleged the neighbors failed to maintain and repair the private sewer lines which served their properties, thereby allowing sewage to leak onto his property and into his basement. By asserting the neighbors' ownership of their properties and the private nature of the sewer lines which ran across those properties, the pleading was sufficient to show the defendants had control over the instrumentality of the nuisance.

■ While the defendants may dispute their responsibility for the sewer lines, the trial court could not consider any evidence or defenses in determining whether the petition stated a viable claim. Consideration of a motion to dismiss must be based solely on the sufficiency of the facts appearing on the face of the petition. *Wheeler*, 65 S.W.3d at 570. The issue is not whether the plaintiff is entitled to a judgment in his favor, rather it is whether he is entitled to be heard on his claim.

The trial court erred in dismissing Count II because it properly pled facts to establish that the defendants' failure to repair or remedy the sewage line leaks unreasonably interfered with Rychnovsky's use and enjoyment of his property. Taken as true, the allegations state a claim for nuisance. The judgment of dismissal is reversed and remanded on Count II.

## STRICT LIABILITY

■ In Count III, Rychnovsky alleged the defendants were strictly liable for the

property damage caused by leaks in the private sewer line. Defendants moved to dismiss this Count based on Rychnovsky's failure to plead any facts showing that the maintenance of the sewer line is an unduly dangerous activity, as is required to state a claim for strict liability. *Clay v. Mo. Highway & Transp. Comm'n* 951 S.W.2d 617, 623 (Mo.App. W.D.1997).

■ The doctrine of strict liability originated in the English case of *Rylands v. Fletcher*, 1 L.R.-Ex. 265 (1866), *aff'd* 3 L.R.-E & I.App. 330 (1868), to provide relief for injuries or damages arising from abnormally dangerous activities. Missouri courts have narrowly applied the doctrine in cases involving such routinely hazardous activities as blasting operations or exposure to radioactive emissions at a nuclear plant. *Bennett v. Mallinckrodt, Inc.*, 698 S.W.2d 854, 868 (Mo.App. E.D.1985); *Clay*, 951 S.W.2d at 623. A tortfeasor may be held strictly liable "when he damages another by a thing unduly dangerous and inappropriate to the place where it is maintained, in the light of the character of that place and its surroundings." *Bennett*, 698 S.W.2d at 867.

To state a claim for strict liability, Rychnovsky had to plead facts showing that: (1) the defendants' shared use of the private sewer line created a high degree of risk of harm; (2) the harm has been and will be significant; (3) the risk cannot be eliminated; and (4) the harm outweighs the value of the operation of the sewer line and resulted in injuries to Rychnovsky. *See Clay*, 951 S.W.2d at 623. The Count III pleading fell far short of these requirements, as Rychnovsky did not allege the defendants' use of the sewer line was an abnormally dangerous activity which created a significant and unavoidable risk of harm. To the contrary, the petition alleged the defendants failed to properly maintain the sewer line, thereby indicating the harm could have been eliminated through routine maintenance. The petition also failed to assert any facts showing that potential harms from the sewer line outweighed its potential benefits to property owners in the subdivision.

At worst, the operation of a sewer line could cause unpleasant odors and sanitation problems that do not equate to the inherent dangers of such routinely hazardous activities as blasting or nuclear plant operations. Other tort theories, such as nuisance, may provide a remedy for Rychnovsky's property damage but, under the facts of this case, the defendants could not be held strictly liable for sewage leaks. The trial court properly dismissed Count III because it failed to state a claim for strict liability under Missouri law.

**Trespass to Land**

In Count IV of his petition, Rychnovsky alleged the defendants committed trespass by allowing sewage from their broken sewer lines to seep onto his property. He also alleged the defendants ran the sewer line across his property without his permission. The petition alleged a dye test confirmed the sewage in Rychnovsky's basement had drained from the defendants' properties. Rychnovsky contends these facts were sufficient to state a claim for the tort of trespass.

■ Where real estate is involved, "trespass is the unauthorized entry upon the land of another, regardless of the amount of force used, even if no damage is done or the injury is slight." *Rosenfeld*, 28 S.W.3d at 449. The unauthorized entry may be made by a person or an object as a result of a person's actions. *Id.* The tort of trespass arises from the direct physical interference with the person or property of another. *Looney v. Hindman*, 649 S.W.2d 207, 212 (Mo. banc 1983).

Defendants argued in their motions to dismiss that Rychnovsky's petition failed to state a claim for trespass because there were no facts to indicate the neighboring property owners had a duty to maintain the sewer lines. As with the nuisance claim, this argument implies that the defendants could not be held liable because they did not have control over the sewer lines and leaks which caused the trespass. We have rejected this argument because Rychnovsky's allegation that the defendants owned the neighboring properties (and shared the private sewer lines which ran across their properties) was sufficient to show their control over the instrumentality of the tort. The trial court erred in dismissing Count IV on the grounds asserted in the defendants' motion to dismiss.

Rychnovsky alleged the defendants' failure to maintain their private sewer line caused sewage to leak onto his property and resulted in damage to his home. These facts stated a claim for trespass in that the defendants' sewage made an unauthorized entry onto Rychnovsky's property and created a direct physical interference with the use of his home. Rychnovsky's additional allegation that the defendants ran a sewer line across his property without his permission was also sufficient to proceed on a claim for trespass. We reverse the dismissal of Count IV and remand.

### Ejectment

In Count V, Rychnovsky alleged the defendants took possession of his property by dumping raw sewage from their sewer line into his basement and by running their sewer line across his property without authorization. The petition asserted the sewage encroachment rendered Rychnovsky's home "unusable, uninhabitable and unfit for any person." On appeal, Rychnovsky contends the trial court erred in dismissing Count V because the allegations stated a claim for ejectment.

Ejectment is a possessory action for recovery of property as authorized by Section 524.010, *et seq.* To make a claim for ejectment, the plaintiff must show the defendant was in possession of premises to which plaintiff had a right of possession. *Smith v. Seamster,* 36 S.W.3d 18, 20–21 (Mo.App. W.D.2000). Plaintiff must further plead that he was damaged as a result of the defendants' unlawful possession of the premises. Section 524.060.

The sole basis for the motion to dismiss the ejectment claim was that Rychnovsky failed to show the neighboring property owners had any duty to maintain the sewer line and prevent its sewage leaks from overflowing onto his property. Although such a "duty" is not an element of an ejectment claim, we recognized *supra* that the petition pled sufficient facts to establish the defendants had control over the private sewer lines which ran across and served the properties they owned. This control creates a reasonable inference that the property owners had a duty to ensure that their use and maintenance of the sewer line did not adversely affect neighboring properties. Given the facts alleging the defendants' responsibility for the sewer line, the only issue for the trial court to consider was whether the allegations were sufficient to show that defendants took *possession* of Rychnovsky's property by allowing their sewage to leak into the basement of his home.

In *Macios v. Hensley,* 886 S.W.2d 749, 751 (Mo.App. E.D.1994), the plaintiffs sought a declaratory judgment regarding their rights to a prescriptive easement across the defendant's land for purpose of accessing the lakeshore. The appeals court recognized the defendant could state a counterclaim for ejectment because the plaintiffs built a boat dock on defendants'

lakeshore property and thereby exceeded the scope of the easement. *Id.* at 752 In positioning the dock and docking their boats next to it, the court held the plaintiffs wrongfully possessed land the defendants were entitled to possess. *Id.* The defendants were allowed to seek possession of the premises and damages under an ejectment theory. *Id.*

Similarly, Rychnovsky has alleged that defendants exceeded the proper use of their sewer easements by failing to maintain the sewer lines and allowing the sewage to flow into his property. He asserted the errant sewage encroached on his use of his basement and rendered it uninhabitable. Rychnovsky further alleges the defendants ran sewer lines across his property without authorization. These facts are sufficient to show that the defendants took possession of at least a portion of the premises Rychnovsky was entitled to possess. Because the petition minimally states a claim for ejectment, we reverse the dismissal of Count V and remand.

### Negligence

Count VI of the petition asserted the defendants' negligence in failing to maintain the sewer line and prevent the leaks which caused damage to Rychnovsky's property. To state a negligence claim, Rychnovsky had to plead "ultimate facts" showing: (1) the defendants had a duty to protect him from injury; (2) the defendants failed to perform that duty; and (3) his injury resulted from such failure. *Hockensmith v. Brown,* 929 S.W.2d 840, 844 (Mo.App. W.D.1996).

■ The defendants argued Count VI should be dismissed because there were no facts pled to show the defendants had a duty to maintain the sewer line and consequently protect Rychnovsky's property from sewage damage. Dismissal was inappropriate on this ground because, as we held *supra,* the petition alleged sufficient facts to establish the defendants had control over the private sewer lines which served their properties and, thus, had a corresponding duty to prevent any sewage leaks from overflowing onto neighboring properties. Moreover, Rychnovsky was required to state only the ultimate facts in support of his negligence claim, and he did so by alleging the following in paragraphs 52–56 of the petition:

The Defendants have a duty to maintain the sewer line for their properties . . .

The break in the sewer line was the direct and proximate result of the careless and negligent acts and omissions of the Defendants . . .

As a direct and proximate result of the careless and negligent acts and omissions of the Defendants as aforesaid, Plaintiff . . . has incurred damages. . . .

These allegations were sufficient to invoke the substantive elements of a negligence claim. While the defendants may assert affirmative defenses and factually dispute the allegations in the petition, our only concern on a motion to dismiss is whether the petition states a claim upon which relief *could* be granted and not whether the plaintiff will ultimately prevail. We reverse the dismissal of Count VI and remand.

### CONCLUSION

The judgment of dismissal is affirmed on Counts I and III. The judgment is reversed as to Counts II, IV, V, and VI and the cause is remanded for further proceedings on the nuisance, trespass, ejectment, and negligence claims with regard to all defendants except Estella Stuart, Scott Robinson, and Gregory Robinson.

All concur.