

# Missouri Court of Appeals
## Western District

RACKET MERCHANDISE COMPANY, )
            )  **WD86753 consolidated with**
      **Respondent,**  )  **WD86767**
**v.**            )
            )  **OPINION FILED:**
**718 GRAND, LLC, U.S. PROPERTY,**  )
**INC. AND POWER & LIGHT**    )  **April 22, 2025**
**PROPERTIES, LLC,**      )
            )
      **Appellants.**  )
            )

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Sarah Anne Castle, Judge**

**Before Division Three: Edward R. Ardini, Jr., Presiding Judge,
Alok Ahuja, Judge, and Thomas N. Chapman, Judge**

718 Grand, LLC, Power & Light Properties, LLC, and U.S. Property, Inc. appeal the judgment in favor of Racket Merchandise Company on its claims for nuisance, ejectment, and negligence and awarding compensatory and punitive damages totaling $5,180,000. They raise four points on appeal challenging the denial of their motions for directed verdict on the ejectment claim and jury instructions for damages and for punitive damages. The judgment is affirmed.

**Background**

This case involves properties located in the same city block in downtown Kansas City. Racket Merchandise Company ("Racket"), a Kansas City business that has been family-owned for six generations, was incorporated in 1891 as a general store. It currently specializes in providing supplies to the commercial airline industry, and it has operated for over 80 years at its current location at 713 Walnut Street (the "Racket Building"). The building, which Racket owns, contains a 35,000 square foot warehouse and some office space with a first and second floor and a basement. Racket's competitive advantage and a key to maintaining its relationship with the airlines that it supplies has been its abundant storage space in the Racket Building, including significant storage space in its basement that it has used for decades to store product inventory. The basement has long been a safe and secure space, reflected in its designation as a civil defense shelter "during the height of the Cold War, Cuban Missile Crisis."

718 Grand, LLC ("718 Grand"), Power & Light Properties, LLC ("Power & Light"), and U.S. Property, Inc. ("U.S. Property") (collectively "Defendants") are three companies owned and operated by the same person. 718 Grand owns property at 718 Grand Boulevard; Power & Light owns property at 110 East 8th Street; and U.S. Property is the property management company working to develop both properties. When the properties were acquired in 2013, a parking garage structure stood on the 718 Grand property and a building stood on the Power & Light property. Both structures were adjacent to the Racket Building.

In 2015, the State of Missouri listed the 718 Grand parking garage in the National Register of Historic Places. In September 2017, the City of Kansas City issued an Order to Demolish or Repair the Power & Light building and an Emergency Order to repair regarding the 718 Grand garage structure. The orders found both structures to be a "dangerous building" and an immediate danger or detriment to the life, health, safety, or welfare of the public or their occupants. The City also conducted a blight study of the properties, finding the existence of a variety of blighting conditions. In December 2017, the Council of Kansas City issued a resolution declaring that the area including both properties was "a blighted and insanitary area in need of redevelopment and rehabilitation" and ordered demolition begin within 15 days of obtaining a demolition permit.

Demolition began in June 2018. Defendants hired Nebraska-based NGC Group, Inc., NG Consulting LLC, and CMJ Enterprises, Inc. (collectively the "NGC Parties")[1] as their construction manager to oversee (and later perform parts of) the demolition work, and contractor Double D, Inc. (d/b/a Dale Brothers) ("Dale Brothers") to perform the demolition work.

The demolition caused various damage to the Racket Building. While netting was placed on three sides of the garage to prevent falling debris from causing damage around

---

[1] NGC Group and NG Consulting was owned and controlled by the same person. This person also had an investment interest in CMJ Enterprises. In its petition, Racket alleged that NGC Consulting and NG Consulting appeared to operate in tandem or interchangeably. The three companies will be referred to together in this opinion.

3

the structure, no netting was placed on the fourth side of the garage facing the Racket Building's roof, which was lower than the top of the garage. During the demolition of the garage, a steel beam, a window with a steel frame, and "a giant mass of bricks" were pushed onto the Racket Building roof, damaging it. Racket notified Defendants by email on June 4, 2018, about issues with the roof.

Additionally, close to 400 truckloads of heavy clay were hauled to the demolition site for grading the lot and backfilling against the Racket Building to drain water away from it. The clay was dumped on the property and formed a large hill sloping toward the Racket Building. Water would run off the hill, pool at the corner of the building, and flood into the building. The demolition also punctured a hole or cavity on the pavement of the 718 Grand property, which allowed water, dirt, and clay to flow underground and into the Racket Building's basement. This flooding destroyed valuable inventory that was stored in the basement, ruined valuable plastic-injection molds, and damaged the building's electrical equipment. The repeated flooding also caused the basement to become moldy, preventing Racket from renting out part of its ground-level office space as it had in the past. Beginning on October 8, 2018, the day of the first major flooding event, through March 13, 2019, Racket sent Defendants several emails, with photographs attached, regarding the flooding of its basement from water running off the clay mound and from the cavity asking Defendants to rectify the situations. Besides placing a few sandbags around the cavity, which did not stop water from entering the cavity and flooding the Racket Building basement, Defendants did nothing to remedy the water

**4**

problems.

In late 2018, the demolition stalled when two unanticipated issues arose after the removal of the garage structure. First, concrete support pillars for the garage had been poured directly against and were embedded into the Racket Building and could not be removed with the equipment used to demolish the garage (such as a large excavator and jackhammers) because it would have destroyed the building. Additionally, the east wall of the Racket Building was not a load-bearing wall and would not withstand the planned grading and backfill with the heavy clay soil. Dale Brothers proposed a solution to remove the pillars by employing a professional concrete saw company to cut them off and then a mason to repair any damage to bricks and to seal the wall. The NGC Parties did not accept Dale Brothers' bid for the extra work needed to remove the pillars. Dale Brothers also sought engineering guidance from Defendants about the backfill issue, but never received any and eventually left the project unfinished.

The large clay hill remained, channeling water directly at the Racket Building and causing repeated water intrusions over the ensuing years. On April 3, 2019, an attorney for Racket sent Defendants a letter outlining the damage caused by the demolition, attaching several photographs of the damage, requesting Defendants to correct the water damage and other issues, and advising them that Racket was prepared to pursue legal remedies including claims for temporary nuisance, negligence, ejectment, and others.

On June 11, 2019, Racket filed its original petition against Defendants for injunctive relief and damages. In May 2020, the City of Kansas City again determined

that the 718 Grand property was a "DANGEROUS BUILDING and PUBLIC NUISANCE" and it was ordered "demolished or repaired." In December 2020, Defendants contracted with the NGC Parties to remove the pillars on the wall of the Racket Building. Despite being informed that the pillars should only be removed with hand tools because of the structural issues with the wall, the NGC Parties used both hand tools and jackhammers to remove the pillars, causing damage to the masonry and walls of the Racket Building.

On October 19, 2021, Racket filed its first amended petition against Defendants, the NGC Parties, and Dale Brothers for injunctive relief and damages for nuisance, ejectment, trespass, and negligence. Racket and the NGC Parties and Dale Brothers reached mid-trial settlements before the case was submitted to the jury, and Racket's claims against them were dismissed with prejudice. Following a nine-day trial in late March/early April 2023, the jury returned verdicts in favor of Racket and against Defendants on the nuisance, ejectment, and negligence claims and awarded compensatory damages of $750,000, $400,000, and $180,000, respectively.[2] On the nuisance claim, it also awarded Racket punitive damages in the amounts of $3,000,000 against U.S. Property, $230,000 against 718 Grand, and $230,000 against Power & Light. On the negligence claim, it awarded Racket punitive damages in the amounts of $180,000 against U.S. Property, $180,000 against 718 Grand, and $180,000 against Power & Light.

---

[2] The trespass claim was not submitted to the jury.

6

The trial court entered judgment on the jury's verdicts on April 12, 2023.

On July 20, 2023, the trial court entered an amended judgment, reducing the judgment against Defendants by $150,000, the amount of the settlement between Racket and NGC and Dale Brothers and awarding post-judgment interest. Thereafter, the trial court conducted a hearing on the unresolved claim for injunctive relief.

On November 17, 2023, the trial court entered its second amended judgment, granting in part and denying in part Racket's claim for injunctive relief. It ordered Defendants to install riprap (a blanket of loose stones to slow water runoff) or a similar erosion measure to resolve the flow of water from the 718 Grand property towards Racket's property.

This appeal by Defendants followed.

### Ejectment Claim

In their first point on appeal, Defendants contend that the trial court erred in denying their motions for directed verdict because Racket failed to adduce substantial evidence to support submission of the claim for ejectment. They argue that they never had possession of the basement or any contents of the Racket Building and that Racket never demanded possession or sought or obtained an order of possession. They also argue that Racket used the existence of the claim to improperly seek damages for both temporary and permanent nuisance, which is expressly prohibited and resulted in an improper double recovery and excessive verdicts.

Racket initially asserts that Defendants failed to preserve for appellate review their

7

argument regarding damages in this point. "[T]o preserve a submissibility issue for appellate review, it must be included in both a motion for directed verdict at the close of all evidence and a motion for JNOV." *Heifetz v. Apex Clayton, Inc.*, 554 S.W.3d 389, 395 (Mo. banc 2018). Rule 72.01(a) requires that a motion for directed verdict "state the specific grounds therefor." "[A] motion for directed verdict that does not comply with Rule 72.01(a) neither presents a basis for relief in the trial court nor preserves the issue in the appellate court." *Piers v. Dep't of Corrections*, 688 S.W.3d 65, 70 (Mo. App. W.D. 2024) (internal quotes and citations omitted). Objections at trial must be specific enough to allow the trial court an opportunity to correctly rule on the alleged error. *Id.* at 71-72.

The only ground raised by Defendants in their motions for directed verdict at the close of Racket's case and at the close of all evidence and in their motion for JNOV on the ejectment claim was that Racket failed to produce any evidence that they were in possession of Racket's property. Defendants did not raise an argument in the motions that Racket's ejectment claim allowed improper damages. Because they failed to present the specific argument in their motions for directed verdict and their motion for JNOV regarding damages, the issue is not preserved for appellate review in this point which addresses submissibility. *Id.* at 72.

The standard of review for the denial of a motion for directed verdict and a motion for JNOV is essentially the same. *City of Harrisonville v. McCall Serv. Stations*, 495 S.W.3d 738, 748 (Mo. banc 2016). The appellate court must determine whether the plaintiff presented a submissible case by presenting evidence to support every element

**8**

necessary for liability. *Id.* "Evidence is viewed in the light most favorable to the jury's verdict, giving the plaintiff all reasonable inferences and disregarding all conflicting evidence and inferences." *Id.* (internal quotes and citation omitted). The jury's verdict will be reversed for insufficient evidence only where "there is a complete absence of probative fact to support the jury's conclusion." *Id.* (internal quotes and citation omitted).

Ejectment is a possessory action authorized by section 524.010, *et seq.*, RSMo 2016. *Wax v. Vickers*, 701 S.W.3d 903, 907 (Mo. App. S.D. 2024); *Rychnovsky v. Cole*, 119 S.W.3d 204, 212 (Mo. App. W.D. 2003). "An action for the recovery of the possession of premises may be maintained in all cases where the plaintiff is legally entitled to the possession thereof." § 524.010. To make a claim for ejectment, the plaintiff must show (1) plaintiff had a right of possession of property and (2) defendant's retention of possession of said property under no valid right after a demand for surrender has been made. § 524.080;[3] *Copper v. Ringen*, 671 S.W.3d 409, 418 (Mo. App. W.D. 2023); *Rychnovsky*, 119 S.W.3d at 212. The plaintiff must plead that it was damaged as a result of the defendant's unlawful possession of the property. § 524.060;[4] *Rychnovsky*,

---

[3] Section 524.080 provides,

> To entitle the plaintiff to recover, it shall be sufficient for him to show that, at the time of the commencement of the action, the defendant was in possession of the premises claimed, and that the plaintiff had such right to the possession thereof as is declared by this chapter to be sufficient to maintain the action.

[4] Section 524.060 provides,

119 S.W.3d at 212. The plaintiff may recover damages for waste and injury and rents and profits, subject to certain limitations related to when the defendant had knowledge of the plaintiff's claim. § 524.110.[5]

Defendants argue that they never had possession of the basement or any contents of the Racket Building and that Racket never demanded possession or sought or obtained an order of possession. However, evidence was presented that clay and silt from Defendants' property repeatedly entered the Racket Building's basement and that Racket

It shall be sufficient for the plaintiff to aver in the petition that on some day therein specified, he was entitled to the possession of the premises, describing them, and being so entitled to the possession thereof, that the defendant afterward, on some day to be stated, entered into such premises, and unlawfully withholds from the plaintiff the possession thereof, to his damage, in any sum he may claim.

[5] Section 524.110 provides,

If the plaintiff prevail in the action, he shall recover damages for all waste and injury, and, by way of damages, the rents and profits, down to the time of assessing the same, or to the time of the expiration of the plaintiff's title, under the following limitations:

(1) When it shall not be shown on the trial that the defendant had knowledge of the plaintiff's claim prior to the commencement of the action, such recovery shall be only from the time of the commencement of the action;

(2) When it shall be shown on the trial that the defendant had knowledge of the plaintiff's claim prior to the commencement of the action, and that such knowledge came to the defendant within five years next preceding the commencement of the action, such recovery shall be from the time that such knowledge came to the defendant;

(3) When it shall be shown on the trial that knowledge of the plaintiff's claim came to the defendant more than five years prior to the commencement of the action, such recovery shall only be for the term of five years next preceding the commencement of the action.

repeatedly demanded that Defendants remedy the condition. The executive vice president of Racket testified that beginning in October 2018, after the clay mound was built and a hole opened up in the pavement on Defendants' demolition site, the Racket Building basement flooded multiple times with water, clay, and silt after heavy rains. Numerous videos and photographs were admitted into evidence showing the flooding. The executive vice president testified that Racket repeatedly tried to clean the clay and silt from the basement but eventually left it because it slowed down the water intrusions. He further testified that Racket made several requests for Defendants to complete the demolition and to remedy the flooding issues, including the threat of a lawsuit for ejectment. Several emails and letters were admitted showing Racket's communication with Defendants about the issues. All of this evidence supported the element that Defendants were in possession of at least a portion of the Racket Building. *See Rychnovsky*, 119 S.W.3d at 213 (defendant's actions of running their sewer lines across the plaintiff's property and of failing to maintain the sewer lines allowing sewage to flow into the plaintiff's basement were sufficient to show that the defendants took possession of at least a portion of the premises that the plaintiff was entitled to possession); *Smith v. Seamster*, 36 S.W.3d 18, 20-21 (Mo. App. W.D. 2000) (where defendant admitted at trial that he had a significant amount of personal property scattered over three to five acres of land owned by the plaintiffs, plaintiffs made a claim for ejectment). Racket presented a submissible case for ejectment, and the trial court did not err in denying Defendants' motions for directed verdict.

**11**

Point one is denied.

## Jury Instructions

Defendants' points two, three, and four challenge the trial court's submission of the jury instructions for damages and for punitive damages. In point two, they contend that the trial court erred in overruling their objections to the damages instructions for the claims of nuisance, ejectment, and negligence because the instructions allowed the jury to award overlapping, duplicate damages for the claims. In points three and four, Defendants contend that the trial court erred in overruling their objections to the punitive damages instructions for the nuisance and negligence claims because the instructions did not contain a knowledge element.

"Appellate courts are merely courts of review for trial errors, and there can be no review of a matter which has not been presented to or expressly decided by the trial court. This is so by court rule, statute, and controlling case law." *Lewis v. Lewis*, 671 S.W.3d 734, 740-41 (Mo. App. W.D. 2023) (internal quotes and citation omitted). Rule 70.03 governs objections to instructions and provides, "Counsel shall make specific objections to instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless that party objects thereto on the record during the instructions conference, stating distinctly the matter objected to and the grounds of the objection." "Additionally, the same objection must be raised in a new trial motion." *Rhoden v. Mo. Delta Med. Ctr.*, 621 S.W.3d 469, 480 (Mo. banc 2020) (citing Rule 70.03). "Timely objections to an instruction are required as a condition precedent to appellate review in

order to afford the trial court an opportunity to correct any mistakes immediately and inexpensively without risking the delay and expense of an appeal and a retrial." *Howard v. City of Kansas City*, 332 S.W.3d 772, 790 (Mo. banc 2011) (internal quotes and citation omitted).

"Whether a jury was instructed properly is a question of law that [the appellate court] reviews *de novo*." *Ross-Paige v. St. Louis Metro. Police Dep't*, 492 S.W.3d 164, 172 (Mo. banc 2016). The appellate court views the evidence in the light most favorable to submission of the instruction. *Id.* "The party challenging the instruction must show that the offending instruction misdirected, misled, or confused the jury, resulting in prejudice to the party challenging the instruction." *Id.* (quoting *Hervey v. Mo. Dep't of Corr.*, 379 S.W.3d 156, 159 (Mo. banc 2012)). "Instructional errors are reversed only if the error resulted in prejudice that materially affects the merits of the action." *Hervey*, 379 S.W.3d at 159 (internal quotes and citation omitted).

"Whenever Missouri Approved Instructions contain an instruction applicable in a particular case that the appropriate party requests or the court decides to submit, such instruction shall be given to the exclusion of any other instructions on the same subject." Rule 70.02(b). Departure from an applicable MAI constitutes error, its prejudicial effect to be judicially determined. Rule 70.02(c); *Hervey*, 379 S.W.3d at 159. "If a particular MAI does not state the substantive law accurately, it should not be given." *Hervey*, 379 S.W.3d at 159. "[B]efore reversible error can be predicated on the giving of a MAI, the complaining party need show that, under all the evidence, the instruction was a

misdirection to the jury resulting in prejudicial error." *Crisp v. Mo. Sch. for Deaf, Dep't of Elementary & Secondary Educ.*, 681 S.W.3d 650, 665 (Mo. App. W.D. 2023) (internal quotes and citation omitted).

### *Damages Instructions*

In point two, Defendants contend that the trial court erred in overruling their objections to the damages instructions for the claims of nuisance, ejectment, and negligence because the instructions allowed the jury to award overlapping, duplicate damages for the claims. Racket correctly asserts that Defendants did not preserve this point for appellate review.

At trial, Defendants did not object to the trial court's damages instructions on the ground they now raise on appeal—that the instructions were somehow defective, because they allowed the jury to award duplicative damages. During the instruction conference, when the trial court asked generally about objections to the group of instructions submitting Racket's negligence claim, defense counsel made the following general objection:

> Your Honor, *I don't have any objections to this particular instruction*, but I can't remember if we brought this up at the first instruction conference, but *I object to the submission of multiple claims requesting the same damages*. I think I brought that up at some point in one of these hearings, but our position is that these all seek the same recovery and *the plaintiff should have elected his remedies and can only submit one*, but *other than that no more objections* to this.

(emphasis added). When the trial court inquired about the specific damages instruction for negligence (Instruction No. 24), it noted "an objection from defendant on submission

**14**

of the issue and any instruction as it relates to the claim of negligence" and asked if there were any further objections on the instruction. Defense counsel replied, "No." In their motion for new trial, Defendants vaguely argued, "Instruction 12 [the negligence damages instruction], in conjunction with the other damage instructions, allowed plaintiff to obtain double recovery." Their argument, however, was again based on the submission of "multiple causes of action for the same damages result[ing] in redundant damage theories that allowed for the award of more than a full recovery under overlapping harm."

Defense counsel's objection did not raise at trial or in their motion for new trial any particular defect in the form of the trial court's damages instructions. Instead, Defendants objected to any instruction as it related to the negligence claim on the basis that Racket was prosecuting "multiple claims requesting the same damages." Because of the purported duplicativeness of Racket's substantive claims, Defendants contended that Racket "should have elected [its] remedies and can only submit one" theory. This contention appeared to invoke either the "election of remedies" or "election of inconsistent theories of recovery" doctrines. As the Supreme Court explained in *Scott v. Blue Springs Ford Sales, Inc.*, 176 S.W.3d 140 (Mo. banc 2005),

> The election of remedies doctrine is a doctrine of estoppel, basically providing that where a party has the right to pursue one of two inconsistent remedies and makes an election, institutes suit, and prosecutes it to final judgment, that party cannot thereafter pursue another and inconsistent remedy. Entirely distinct from the election of remedies is the election of inconsistent theories of recovery. Under this doctrine, a party must elect between theories of recovery that are inconsistent, even though pled

15

> together as permitted by Rule 55.10, before submitting the case to the trier of fact. If two counts are so inconsistent that proof of one necessarily negates, repudiates, and disproves the other, it is error to submit them together.
>
> Each of these theories requires an inconsistency to exist with multiple theories of recovery.

*Id.* at 142-43. *See also Trimble v. Pracna*, 167 S.W.3d 706, 711 (Mo. banc 2005) (citing

*Whittom v. Alexander-Richardson P'ship.*, 851 S.W.2d 504, 506-07 (Mo. banc 1993)).

Whatever legal theory defense counsel sought to invoke at trial, however, is

entirely distinct from the objection Defendants raise on appeal. Most strikingly, during

oral argument Defendants' counsel acknowledged that Racket's nuisance, ejectment, and

negligence claims were *not* inconsistent, and that Racket was entitled to submit all three

claims to the jury, directly contrary to the objection Defendants made at trial. Instead of

relying on the objection they made at trial, Defendants now argue that the *form* of

Racket's instructions permitted a double recovery. They do so by contending that the

verdict directors on Racket's three substantive claims contained overlapping descriptions

of the conduct underlying the claims, and that the court's damages instructions provided

only vague and broad descriptions of the damages recoverable on each theory.

Defendants, however, did not object to the particular language of any of the verdict

directors, or of the damages instructions, in the trial court. Defendants may not now

argue for reversal, and for a new trial, based on arguments they never made to the trial

court. Rule 70.03; *Howard*, 332 S.W.3d at 790.

Defendants also suggest that, even if their instructional error claims were not

**16**

properly preserved, a manifest injustice occurred here, because the instructions permitted a double recovery. An appellate court has discretion to review unpreserved arguments for plain error. Rule 84.13(c); *Lopez v. Cedar Fair, L.P.*, 702 S.W.3d 114, 128 (Mo. App. W.D. 2024). "However, plain error review is rarely applied in civil cases, and may not be invoked to cure the mere failure to make proper and timely objections." *Lopez*, 702 S.W.3d at 128 (internal quotes and citation omitted). Defendants themselves state that there was no way to conclude, on the existing record, that the jury in fact awarded Racket duplicative damages. Moreover, Defendants have not contended that the total amount of compensatory damages awarded by the jury was unsupported by the evidence. This is not the rare civil case in which plain-error review would be justified. *Id.*

Point two is denied.

### *Punitive Damages Instructions*

In their third and fourth points on appeal, Defendants contend that the trial court erred in overruling their objections to the punitive damages instructions for the nuisance and negligence claims. They now argue that, because the verdict directors for the claims did not contain a "knowledge" element, the punitive damages instructions were required to contain such element, but did not. Again, Racket correctly argues that Defendants failed to preserve this point for appellate review.

For the nuisance claim, the jury was instructed regarding punitive damages (Instructions No. 13) as follows:

If you find in favor of Plaintiff Racket Merchandise Company under

**17**

Instruction No. 9, and if you believe the conduct of Defendant U.S. Property, Inc., as submitted in Instruction No. 9 showed complete indifference to or conscious disregard for the rights of others, then in addition to any damages to which you may find Plaintiff entitled under Instruction No. 12, then you may award Plaintiff an additional amount as punitive damages in such sum as you believe will serve to punish Defendant U.S. Property, Inc. and to deter Defendant U.S. Property, Inc. and others from like conduct.

If you find that Defendant U.S. Property, Inc. is liable for punitive damages in this stage of the trial, you will be given further instructions for assessing the amount of punitive damages in another stage of trial.

The instruction was then repeated for the other individual defendants 718 Grand and Power & Light. The jury was similarly instructed (in Instruction No. 25) on punitive damages on the negligence claim. Said punitive damages instructions were patterned after MAI 10.02 and 10.03 and MAI Illus. 35.19.[6]

However, the Notes on Use 1(1) of MAI 10.02 cautions that MAI 10.02 is not adequate to submit punitive damages where the negligence verdict directing instruction does not contain a submission on the issue of defendant's knowledge. *Frost v. PCRMC Med. Group, Inc.*, 694 S.W.3d 103, 124 n.8 (Mo. App. S.D. 2024). *See Menaugh v. Resler Optometry, Inc.*, 799 S.W.2d 71, 74 (Mo. banc 1990) (discussing circumstances where MAI 10.02 is inadequate to submit punitive damages, including where the verdict director also does not submit element of defendant's knowledge), *overruled on other*

---

[6] MAI 10.02 is the exemplary damages instruction for negligence constituting conscious disregard for others. Racket brought its nuisance action under a negligence, rather than an intentional, theory.

*ground by Rodriguez v. Suzuki Motor Corp.*, 936 S.W.3d 104 (Mo. banc 1996).

In this matter, the verdict directors did not contain a submission of Defendants' knowledge that might support an award of punitive damages. In such instances, MAI 10.07 modifies MAI 10.02 regarding submission of specific acts and knowledge and provides:

> If you find in favor of plaintiff under Instruction Number __*(here insert number of plaintiff's verdict directing instruction based on negligence)*, and if you believe that:
>
> First, *(here describe the act or omission which justifies submission of punitive damages)*,
>
> Second, defendant knew or had information from which defendant, in the exercise of ordinary care, should have known that such conduct created a high degree of probability of injury, and
>
> Third, defendant thereby showed complete indifference to or conscious disregard for the safety of other,
>
> then in addition to any damages to which you find plaintiff entitled under Instruction Number __*(here insert number of plaintiff's damage instruction)* you may award plaintiff an additional amount as punitive damages in such sum as you believe will serve to punish defendant and to deter defendant and other from like conduct[.]

The Notes on Use 2 of MAI 10.07 provide, "This instruction is MAI 10.02 modified to resolve the problems addressed in *Menaugh v. Resler Optometry, Inc.*, 799 S.W.2d 71 (Mo. banc 1990)."

During the instruction conference, Defendants objected to the punitive damages instruction for nuisance (Instruction No. 13), with counsel stating "I believe this instruction should be modified to meet the standard of punitive damages set forth in the

**19**

new statute on punitive damages." Defense counsel proposed that the instruction contain the language "which was done to intentionally harm the plaintiff without just cause or that those defendants acted with a deliberate and flagrant disregard to the safety of others," presumably to replace the "showed complete indifference to or conscious disregard for the rights of others" standard.[7] Defense counsel explained, "I believe that tracks the statute." On the punitive damages instruction for negligence (Instruction No. 25), Defendants repeated the same objection they had to the punitive damages instruction for nuisance, with counsel simply stating "we object to the standard." In their motion for new trial, Defendants repeated their argument that the standard in section 510.261.1 should have been utilized in the punitive damages instructions for nuisance and negligence.

Defendants, however, did not argue at trial or in their motion for new trial, that the absence of the knowledge requirement in the verdict directors required different punitive damages instructions. The only ground raised in their objections to the instructions and in their motion for new trial was that the standard as revised in section 510.261, RSMo Cum. Supp. 2020, should have been used in the instructions instead of the conscious disregard standard. "Section 510.261 was one of several provisions in an act passed by the legislature in 2020 relating to punitive damages and unlawful merchandising

---

[7] Defendants' attorney stated that he submitted a proposed instruction with the new language, and the trial court said that it would be shown as a refused instruction, but it is not in the record on appeal with the other refused instructions.

practices." *Largent v. Peliken*, 628 S.W.3d 162, 164 (Mo. App. E.D. 2021). Subsection 1 of the statute sets forth the standard for a punitive damage award and reads, "Except as otherwise provided by statute, punitive damages shall not be awarded unless the claimant proves by clear and convincing evidence that the defendant intentionally harmed the plaintiff without just cause or acted with a deliberate and flagrant disregard for the safety of others." § 510.261.1. The act, which included section 510.261, became effective on August 28, 2020, and "the legislature expressly stated that '[t]he provisions of this act shall apply to causes of action filed on or after August 28, 2020.'" *Largent*, 628 S.W.3d at 165 (quoting section 510.262). Thus, section 510.261 does not apply to this case, which was filed in June 2019. Defendants now seek to recast their erroneous arguments made at trial into something that suits their point on appeal.

Defendants' objections at trial centered only on the purported change in the standard for punitive damages (set forth in Instructions 13 and 25, patterned after MAI 10.02) and did not address the knowledge element, and did not suggest the necessity of a different instruction (patterned after MAI 10.07) that would address the requisite knowledge for punitive damages (where otherwise absent from the verdict directing instructions on the underlying claims). For the first time on appeal, Defendants argue that the language of section 510.261.1 "would have accomplished the requirement that is also found in MAI 10.07 [2008 Revision] that is to be used to submit the knowledge requirement (if not found in the verdict directing instruction)." The arguments are clearly distinct.

Defendants did not object at trial to the punitive damages instructions for the nuisance and negligence claims on the basis that the instructions lacked the knowledge element. The trial court was never appraised of, or given the opportunity to consider, the argument Defendants now make on appeal. The point is, therefore, not preserved for appellate review. *Howard*, 332 S.W.3d at 790 (claim that the trial court erred in instructing the jury on future damages was not preserved for appellate review where no objection to the instruction or to the failure to give the alternative instruction was made at trial). *See also Lewis*, 671 S.W.3d at 741 (claim that trial court erred in awarding punitive damages because the procedure required by section 510.261.5 was not followed was not preserved for appellate review where the issue was never presented to the trial court).

An appellate court has discretion to review unpreserved arguments for plain error. Rule 84.13(c); *Lopez*, 702 S.W.3d at 128. In a brief footnote, Defendants state that "[t]his court may act *sua sponte* regarding the substantial punitive damage awards under plain error review…." Defendants do not, however, request plain error review or develop a plain error review argument in this point. As discussed in point two above, "plain error review is rarely applied in civil cases, and may not be invoked to cure the mere failure to make proper and timely objections." *Lopez*, 702 S.W.3d at 128 (internal quotes and citation omitted). For these reasons, this court declines to review Defendants'

unpreserved claims of instructional error.[8]  *See id.* (declining to engage in plain error review of claim of instructional error where there was no objection to the instructions at trial); *Denney v. Syberg's Westport, Inc.*, 665 S.W.3d 348, 355 (Mo. App. E.D. 2023) (declining to engage in plain error review of claim of instructional error where there was no objection at trial on the basis raised in the appellate court).

Points three and four are denied.

## Conclusion

The judgment is affirmed.

_____
Thomas N. Chapman, Judge

All concur.

---

[8] Regardless, it was not seriously disputed at trial that Defendants had actual knowledge that the condition of their property from the demolition was causing flooding into the Racket Building. Racket's executive vice president testified that Racket made several requests for Defendants to complete the demolition and to remedy the flooding issues, and several emails and letters were admitted showing Racket's communication with Defendants about the issues.  The owner of the defendant companies acknowledged at trial the repeated contacts from Racket to Defendants about the issues.  And during closing argument, Defendants conceded that "we are responsible for some of the water in the basement" and "those are damage elements that I think can be awarded."  Because the knowledge element was not seriously disputed at trial, the omission of it from the punitive damages instructions had no effect on the verdict, and plain error relief is not warranted.  *See State v. Cooper*, 215 S.W.3d 123, 126 (Mo. banc 2007), and *State v. Yocco*, 698 S.W.3d 819, 832 (Mo. App. E.D. 2024) (if evidence establishing element omitted from verdict directing instruction is not seriously disputed, omission has no effect on jury's verdict, and no plain error relief need be given).